**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT FOR DAVID PAITSEL | Case No. _____ <br><br> **UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF CRIMINAL**
**COMPLAINT AND ARREST WARRANT**

I, Andrew E. Waltz, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of a criminal complaint and an application for the issuance of an arrest warrant for DAVID PAITSEL.  PAITSEL is a resident of North Carolina with a date of birth of October 14, 1980.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  I have set forth only the facts that I believe are necessary to establish probable cause to charge PAITSEL with bribery in violation of 18 U.S.C. § 201(b)(2)(C) (Public Official Accepting a Bribe).

2.     I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation ("FBI").  I have been in this position since July 12, 2015.  My responsibilities include conducting or assisting with investigations involving public corruption, fraud, and other related violations of federal criminal law.  I am a graduate of the FBI Academy in Quantico, Virginia.  My training included instruction on investigative tools and criminal law, and I have become familiar with the investigative methods and enforcement of federal criminal violations.  Based upon this experience, I have also become well versed in the methodology utilized in criminal conspiracies and activities.

1

**PROBABLE CAUSE**

3.      As described below, the evidence gathered in the course of this investigation, which was jointly undertaken by the FBI and the U.S. Department of Justice Office of Inspector General, establishes probable cause that PAITSEL, being a public official, namely a Special Agent with the FBI, corruptly received, accepted, and agreed to receive and accept things of value from Brian BAILEY, in return for being induced to do acts in violation of his lawful duty.

*BACKGROUND*

4.      The Tenant Opportunity to Purchase Act ("TOPA") provides tenants living in the District of Columbia with the right of first refusal to purchase their residence should the owner decide to sell the property. Under TOPA, tenants are allowed to sell their rights of first refusal to a third party. *See, generally,* D.C. Code § 42-3404.01, *et seq.*

5.      TOPA requires the owner (seller) to provide each tenant a written copy of the Offer of Sale, which contains the asking price and material terms of the sale and a statement that the tenant has the right to purchase the accommodation. D.C. Code § 42-3404.03. TOPA further requires the owner to provide the District of Columbia Department of Housing and Community Development ("DHCD") with a copy of the Offer of Sale and to certify that the seller provided each tenant with a copy. *Id.* The certifications submitted to DHCD by the owners contain the names of the tenants residing at the property.

6.      DHCD has a policy that treats Offer of Sale notices submitted by owners pursuant to TOPA as confidential because they contain the names of tenants. As such, a third party to a real estate transaction cannot obtain Offer of Sale notices except through submitting a Freedom of Information Request with DHCD. Those requests often take weeks to fulfill, and the requesting

party receives a redacted version of the Offer of Sale with the tenants' names redacted due to privacy concerns.

7.     WITNESS ONE was a Program Specialist with the Rental Conversion and Sales Division ("CASD") of the Housing Regulation Administration within DHCD.  As such, she was a "public official" under 18 U.S.C. § 201(a)(1) ("the term 'public official' means … an officer or employee or person acting for or on behalf of … any department, agency or branch of government thereof, including the District of Columbia, in any official function…."). WITNESS ONE's responsibilities included handling the intake of all TOPA filings submitted by owners of properties to DHCD.  WITNESS ONE has worked for DHCD since approximately April 2007.

8.     BRIAN BAILEY is a longtime realtor, developer, and general contractor in the Washington, DC area. His development work focuses on homes and condominiums, and he acts as the general contractor for most of his development projects. Bailey is also a realtor with Tristar Realty of Silver Spring, MD, and has been an active realtor in Maryland and Washington, DC for nearly a decade.

9.     DAVID PAITSEL is a Special Agent with the FBI. He worked previously at FBI headquarters in Washington, DC. PAITSEL is now assigned to the FBI's Charlotte Field Office, Ashville Resident Agency.

*INVESTIGATION*

10.     Information gathered in the course of this investigation establishes that WITNESS ONE corruptly received, accepted, and agreed to receive and accept things of value from BAILEY, in return for being induced to do acts in violation of her lawful duty. Specifically, WITNESS ONE accepted bribe payments from BAILEY in exchange for sending him all Offer of Sale Notices filed with DHCD.

11.     Specifically, my investigation uncovered that BAILEY paid money bribes to WITNESS ONE in return for WITNESS ONE sending confidential un-redacted Offer of Sale notices to Bailey.  As part of my investigation, I obtained a Court-issued search warrant for BAILEY's Yahoo! email account (i.e., bw_bailey@yahoo.com).  I, along with other investigators, reviewed emails in that account and confirmed that WITNESS ONE sent confidential TOPA Offer of Sale notices to BAILEY in return for money payments from BAILEY.

12.     Additionally, while reviewing BAILEY's email account, investigators located numerous emails between BAILEY and PAITSEL's email account, davidpaitsel@gmail.com ("PAITSEL's Gmail Account"). A review of those communications revealed that on several occasions, upon receiving the above-described Offer of Sale Notices from WITNESS ONE, BAILEY then emailed PAITSEL and requested that PAITSEL obtain the contact information for the tenants listed in those notices.  In response to BAILEY's requests, PAITSEL sent BAILEY the requested information using PAITSEL's Gmail Account.  The information sent by PAITSEL appeared to be cut-and-pasted from Thomson Reuters CLEAR ("CLEAR") reports.

13.     CLEAR is an online investigation software product that allows law enforcement agencies to conduct queries for, among other things, people's addresses, telephone numbers, and other personal identifying information. FBI Special Agents, including your affiant, have access to CLEAR and may only use that software within the scope of their employment.

14.     As part of this investigation, I viewed a list of PAITSEL's search queries for his FBI CLEAR account.[1]   From a review of CLEAR account queries, along with his email communications with BAILEY, as well as BAILEY's financial records, your affiant learned

---

[1] FBI-issued CLEAR accounts utilize "blind logging," which means that CLEAR only tracks that a particular user made a search; it does not save the contents of those searches (i.e., the names, addresses, phone numbers actually searched by the FBI employee).

4

BAILEY asked PAITSEL to perform unauthorized queries of tenants having TOPA rights of first refusal using his FBI-issue CLEAR account. PAITSEL then provided that information to BAILEY, who used the information to contact the tenants to purchase their TOPA rights of first refusal. If BAILEY was successful in purchasing those tenants' TOPA rights, and profited from that purchase by re-selling those rights to another investor, BAILEY provided PAITSEL with money in the form of checks. The following are examples of this type of conduct:

***224 T Street NE***

15.     On or about May 11, 2017, WITNESS ONE sent an email to BAILEY containing an Offer of Sale Notice for 224 T Street NE, Washington, DC. WITNESS ONE was not authorized to send that Offer of Sale Notice to BAILEY, as BAILEY was not a party to that real estate transaction. One of the tenants listed in the Offer of Sale Notice had the initials, "P.B."[2]

16.     On or about May 11, 2017, BAILEY sent an email to PAITSEL containing the Offer of Sale Notice for 224 T Street NE. In the body of the email, BAILEY wrote, in relevant part, "David I need your help on this one. If I can get just one of the tenants to sign it would be awesome. The file is attached….The address is 224 T Street NE WDC 20002." BAILEY also listed the names of four tenants for the property in the body of the email, to include "P.B."

17.     On or about May 11, 2017, from approximately 8:33 PM to 8:53 PM, PAITSEL utilized his FBI-issued CLEAR account to conduct approximately forty-nine queries. At approximately 8:54 PM, PAITSEL sent an email to BAILEY containing information for the same four individuals that BAILEY listed in his email, including "P.B." The information appeared to be copied and pasted from CLEAR. The information included, among other things, those individuals' names, addresses, and phone numbers.

---

[2] Your affiant is using initials to refer to tenants to protect their privacy.

18.     On or about May 11, 2017, BAILEY had an approximately 9-minute telephone call with the number that PAITSEL provided for "P.B."  BAILEY had another telephone call, lasting approximately 1 minute, with that same number on May 12, 2017.

19.     During a review of BAILEY's email account, I found a legal document titled, "ASSIGNMENT OF INTEREST AND RIGHT OF 1ST REFUSAL AGREEMENT," dated May 12, 2017, whereby "P.B." agreed to sell his right first of refusal under TOPA to purchase 224 T Street NE to BAILEY for $500 cash. The document was signed by both BAILEY and "P.B."

20.     On or about May 12, 2017, BAILEY sent an email to PAITSEL, which read, in relevant part, "Dave…. I got in touch with ["P.B."]. If I get paid off of it I'm going to give you 5k."

21.     On or about October 4, 2017, BAILEY sent an email to PAITSEL that read, in relevant part, "David...I will have the money tomorrow from the smaller deal. Do you want to meet this weekend so I can get it to you?"

22.     On or about October 4, 2017, PAITSEL responded to BAILEY's previous email and wrote, "Let's plan on 1130 or 12 for Saturday."[3]

23.     The next day, on or about October 5, 2017, BAILEY sent an email to another individual having the initials "S.M." at Monarch Title, which is a title company in Washington, DC.  BAILEY's email contained an image of a blank check for a PNC Bank account ending in 9635, controlled by BAILEY. The subject line of that email read, "Wire Info for 224 T Street NE."

24.     On or about October 6, 2017, BAILEY received a wire transfer of $40,000 into his PNC Bank account ending in 9635 from Monarch Title. A notation for the wire transfer, found in Bailey's bank records, indicated the wire was for an "ASSIGNMENT FEE."

---

[3] October 4, 2017 was a Wednesday. The following Saturday was October 7, 2017.

25.      On or about October 7, 2017, at approximately 9:58 AM, PAITSEL sent a text message to BAILEY that read, "Are you still good for lunch today?" In response, at approximately 10:01 AM, BAILEY wrote, "Louis has a game…so why don't u come so we can hang out…meet me at my house around 12noon."

26.      On or about Saturday, October 7, 2017, BAILEY filled out a withdrawal slip for his PNC Bank account ending in 9635. The withdrawal slip was for $4,100. Based on the above emails and text messages in which BAILEY and PAITSEL agreed to meet on "Saturday" so BAILEY could pay PAITSEL for the "smaller deal," along with BAILEY's statement to PAITSEL that BAILEY would give PAITSEL "5k" if he got "paid off of it," and the date of this withdrawal slip, your affiant believes that some or all of this money was used by BAILEY to pay PAITSEL for providing information from PAITSEL's FBI-issued CLEAR account that led to BAILEY closing on the 224 T Street SE transaction.

### 3021 15th Street NW

27.      On or about May 3, 2017, WITNESS ONE sent an email to BAILEY that contained an Offer of Sale Notice for 3021 15th Street NW. WITNESS ONE was not authorized to send the Offer of Sale Notice to BAILEY. One of the tenants listed in the Offer of Sale Notice had the initials, "T.M."

28.      On or about May 11, 2017, BAILEY sent an email to PAITSEL that read, in relevant part, "I'm doing pretty good on the Topa stuff! See if you can get a number on this guy…. ["T.M."] 3021 15th Street NW Washington DC 2009."

29.      On or about May 11, 2017, from approximately 8:33 PM to 8:53 PM, PAITSEL utilized his FBI-issued CLEAR account to conduct approximately forty-nine queries.  At approximately 8:54 PM, PAITSEL sent an email to BAILEY containing information for "T.M."

that appeared to be copied and pasted from CLEAR. The information included T.M.'s name, address, and phone number.

30.     On or about May 12, 2017, BAILEY sent an email to PAITSEL that read, in relevant part, "Do you have any other info for ["T.M."] 3021 15th Street NW WDC 2009 *[sic]* The number was disconnected…email address anything. Would be good."

31.     On or about May 12, 2017, from approximately 11:21 PM to 11:24 PM, PAITSEL utilized his FBI-issued CLEAR account to conduct approximately fourteen queries. At approximately 11:26 PM, PAITSEL sent an email to BAILEY containing additional information for "T.M." That information appeared to be copied and pasted from CLEAR and included T.M.'s" name, multiple addresses, and a new phone number.

32.     On or about May 13, 2017, BAILEY had an approximately 1-minute telephone call with the new number that PAITSEL provided for "T.M."

33.     During a review of Bailey's email account, I found a legal document titled, "ASSIGNMENT OF INTEREST AND RIGHT OF 1ST REFUSAL AGREEMENT," dated June 5, 2017, that was attached to an email sent by BAILEY to another individual having the initials "D.C." who is a real estate agent in Washington, DC.  In that legal document, "T.M." agreed to sell his first of right of first refusal to purchase 3021 15th Street NW to BAILEY for $10,000. The document was signed by both BAILEY and "T.M."

34.     On or about June 17, 2017, BAILEY sent an email to PAITSEL that read, in relevant part, "Hey Bro… I owe you 5k!!! I found ["T.M."] of 3021 15th Street NW. He assigned his rights over to me. I'm going to flip the contract to another investor who has already escrowed the money to purchase the property."

35.     On or about September 29, 2017, at approximately 2:51 PM, BAILEY sent a text

message to PAITSEL that read, "September 29th for closing on 3021 15th Street Bro! I'll give u that 5k. Keep your fingers crossed. You know how those closings go. Hope all is well Bro! Thanks B!"

36.     On or about December 1, 2017, BAILEY sent an email to PAITSEL that read, in relevant part, "Looks like we will get our money for 3021 15th Street NW between December 7th and the 12th. I owe you 5k on that."

37.     On or about January 11, 2018, BAILEY received a wire transfer into his PNC Bank account ending in 9635. That wire transfer was sent from "DISTRICT A TITLE CORPORATION," which is a title corporation in Washington, DC. The info line for the wire transfer read, in relevant part, "REF 3021 15TH STREET NWFROM *[sic]* DISTRICT TITLE." The amount of the wire transfer was $251,465.

38.     As discussed below, *see* Paragraph 49 *infra*, BAILEY paid PAITSEL $5,000, in the form of a check drawn from BAILEY's PNC Bank account ending in 9635, for the CLEAR queries that PAITSEL performed related to this property.

### *1407 10th Street NW*

39.     On or about September 28, 2017, WITNESS ONE sent an email to BAILEY that contained an Offer of Sale Notice for 1407 10th Street NW. WITNESS ONE was not authorized to send the Offer of Sale Notice to BAILEY. One of the tenants listed in the Offer of Sale Notice had the initials, "M.M."

40.     On or about October 2, 2017, BAILEY sent an email to PAITSEL that contained the Offer of Sale Notice for 1407 10th Street NW. In the body of the email, BAILEY wrote, "Sup Bro! Take a look at this tenant list…See if you can get numbers them *[sic]* please."

41.     On or about October 3, 2017, from approximately 11:15 AM to 11:49 PM,

PAITSEL utilized his FBI-issued CLEAR account to conduct approximately 49 queries.  At approximately 11:44 AM, PAITSEL sent an email to BAILEY containing information for "M.M." The information appeared to be copied and pasted from CLEAR and included "M.M's" name and two phone numbers.

42.     On or about October 12, 2017, BAILEY had an approximately 5-minute long telephone call with one of the phone numbers that PAITSEL provided for "M.M."

43.     On or about October 17, 2017, BAILEY had an approximately 1-minute long telephone call with that same telephone number.

44.     On or about October 18, 2017, BAILEY had another telephone call, lasting approximately 7 minutes, with that same telephone number.

45.     During my review of Bailey's email account, I discovered a legal document titled, "ASSIGNMENT OF INTEREST AND RIGHT OF 1ST REFUSAL AGREEMENT," dated October 19, 2017, that was attached to an email sent by BAILEY to an individual having the initials "A.R.," who is a project manager at a real estate development company in Washington, DC.  In that legal document, "M.M." agreed to sell her right first of refusal to purchase 1401 10th Street NW to BAILEY for $35,000. The document was signed by both BAILEY and "M.M."

46.     On or about December 1, 2017, BAILEY sent an email to PAITSEL that read, in relevant part, "1407 10th Street hopefully will close by the beginning of the year. That one will give you 1500 – 2500."

47.     On or about January 2, 2018, BAILEY received a wire transfer into his PNC Bank account ending in 9635. That wire transfer was sent from "PREMIUM TITLE AND ESCROW LLC," which is a title company in Washington, DC. The info line for the wire transfer read, in part, "ASSIGNMENT FEE/1407 10TH ST." The amount of the wire transfer was $50,000.

48.     On or about January 12, 2018 at approximately 2:21 PM, BAILEY sent a text message to PAITSEL that read, "Should be there by 2pm."

49.     On or about January 12, 2018, BAILEY wrote a check to PAITSEL from his PNC Bank account ending in 9635. The check was for $6,500. The back side of the check was endorsed by PAITSEL.  In an email sent from BAILEY to PAITSEL on December 1, 2017, BAILEY explained that the $6,500 was a payment for 3201 15th Street NW, as well as for another property that PAITSEL conducted CLEAR queries, 1407 10th Street NW. Specifically, PAITSEL received $5,000 for the 3201 15th Street NW queries and $1,500 for the 1407 10th Street NW queries.

## PAITSEL'S VIOLATION OF A LAWFUL DUTY

50.     Title 18, United States Code, Section 201(b)(2)(C) makes it a federal crime to for a public official to "corruptly demand[], seek[], receive[], accept[], or agree[] to receive or accept anything of value personally … in return for … being induced to do or omit to do any action in violation of the official duty of such official…."  Your affiant submits that PAITSEL violated Section 201(b)(2)(C) by seeking, receiving, accepting or agreeing to receive money from BAILEY to do or omit to do an act in violation of PAITSEL's official duty (namely, providing Bailey with information obtained from confidential FBI databases.)

51.     As an FBI agent, PAITSEL owed the FBI and United States Department of Justice ("DOJ"), which oversees the FBI, various lawful duties.  DOJ regulations govern the behavior of DOJ employees, including PAITSEL, and set forth those lawful duties.  Among the lawful duties that PAITSEL owed the FBI and DOJ are the following:

　　　a.  Federal regulations provide that DOJ employees, such as PAITSEL, may not use their position for their own private gain or for that of persons or organizations with which they are associated personally.  5 C.F.R. § 2635.702.

b. Federal regulations further provide that DOJ employees, such as PAITSEL, may not use nonpublic information to further their private interests or those of another. *See* 5 C.F.R. § 2635.703(a).  Nonpublic information is information an employee gains on the job that has not been made available to the general public and is not authorized to be made available upon request. *See id*. at § 2635.703(b).

c. Federal regulations provide that an employee should make an honest effort to use official time and government property only for official business.  5 C.F.R. § 2635.704(a).

d. DOJ employees must endeavor to avoid any actions creating the appearance that the employee is violating the law or the ethical standards set forth in this part. *See* 5 C.F.R. § 2635.101(b)(14).

52.     FBI policy further provides that Special Agents, such as PAITSEL, are generally prohibited from engaging in outside employment.  Division or Field Office heads may approve exceptions to this general prohibition in limited circumstances, such as for coaching, officiating, teaching or instructing no more than five hours per week with a total compensation not exceeding $3,000 per calendar year.  According to the FBI's Security Division, PAITSEL has never submitted any requests to engage in outside employment.

53.     Your affiant is also aware that FBI-issued CLEAR accounts require users to affirm that they are utilizing CLEAR for a "Permissible Purpose" every time they log in to their CLEAR account. CLEAR states the following on its "Permissible Purpose" page:

> To maintain compliance with the privacy provisions of the federal Gramm-Leach-Bliley Act, and the subsequent regulations adopted by the Federal Trade Commission ("GLB"), a user must select only a single purpose from the presented list. Misrepresenting your access purpose is a violation of our subscriber agreement and certain federal and state laws. Any use of information maintained by West, a Thomson Reuters business, other than for the selected permissible purpose is

grounds for account termination and may be referred to the appropriate governmental agency.

The user is then prompted by CLEAR to select one of nine Permissible Purposes from a drop down menu. A CLEAR user must select one of these nine Permissible Purposes before they may proceed to the next screen allowing the user to perform queries.  Those Permissible Purposes are:

a. For use by a person holding a legal or beneficial interest relating to the consumer.
b. For use in complying with federal, state, or local laws, rules, and other applicable legal requirements.
c. For use as necessary to effect, administer or enforce a transaction requested or authorized by the consumer.
d. For use in complying with a properly authorized civil, criminal, or regulatory investigation, or subpoena or summons by federal, state, or local authorities.
e. For use to protect against or prevent actual or potential fraud, unauthorized transactions, claims or other liability.
f. For use by a Law Enforcement Agency, self-regulatory organizations or for an investigation on a matter related to public safety.
g. With the consent or at the direction of the consumer.
h. To persons acting in a fiduciary or representative capacity on behalf of the consumer.
i. For required institutional risk control or for resolving consumer disputes or inquires.

PAITSEL's use of CLEAR to send the above-described information to BAILEY did not fall under any of these "Permissible Purposes."

54.     PAITSEL has filed yearly financial disclosures with the FBI for every calendar year from 2010 through 2017 and has certified that his disclosures were true, complete, and accurate. [4] The forms required PAITSEL to disclose all annual income. A review of PAITSEL's financial disclosures from 2010 to 2017 revealed that he never listed any income earned from performing work for BAILEY or BAILEY's payments to PAITSEL.

---

[4] Paitsel's yearly financial disclosure for 2018 is not due until May 8, 2019.

## CONCLUSION

55.     Your affiant believes that the facts set forth above establish that PAITSEL has committed Bribery in violation of 18 U.S.C. § 201(b)(2)(C).  Specifically, PAITSEL corruptly received, accepted, and agreed to receive and accept money from BAILEY, in return for being induced to do acts in violation of his lawful duty by performing unauthorized queries on his FBI CLEAR account and making unauthorized disseminations of the information obtained from that database to BAILEY.

56.     Based on the foregoing, I respectfully submit that probable cause exists to believe that DAVID PAITSEL committed the offense of Bribery of a Public Official in violation of 18 U.S.C. § 201(b)(2)(C).  Therefore, I respectfully request that a criminal complaint and arrest warrant be issued for DAVID PAITSEL.

Respectfully submitted,

Andrew E. Waltz
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on April ___, 2019

HON. DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE