### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>    v.<br>BRIAN WINSTON BAILEY, *et al.*,<br>        Defendants. | Criminal Action No. 19-0156 (CKK) |

### MEMORANDUM OPINION
(December 7, 2021)

This criminal matter was scheduled for trial beginning December 3, 2021, the fifth trial date set by this court after diligent efforts to ensure Defendants their right to a speedy trial. At 5:17 PM, December 2, 2021—the evening before *voir dire* was scheduled to begin—Mark Schamel ("Mr. Schamel") and his co-counsel Ana Jara, counsel for Defendant Bailey, filed a Motion to Withdraw as Counsel ("Motion to Withdraw"). The Motion argued that counsel for Defendant Bailey had not sufficiently prepared for trial such that they would be unable to provide their client with the Sixth Amendment's guarantee of effective assistance of counsel. Rather than continuing to trial, the Court held a hearing on the Motion to Withdraw at 8:00 AM, December 3, 2021, during which Mr. Schamel indicated that if the Court proceeded with trial as scheduled, his representation of Defendant Bailey would be constitutionally deficient. In addition, the Court inquired of Mr. Schamel what he had done to prepare for his client's trial, and what tasks he felt that he still needed to complete. Based on Mr. Schamel's representations, the Court orally granted the Motion. This Memorandum Opinion further explains why it granted the Motion.

1

## I.      Ineffective Assistance of Counsel

At the December 3, 2021, motions hearing, Mr. Schamel demonstrated to the Court that his lack of preparation for the December 3, 2021, trial date would have stripped his client of his right to effective assistance of counsel.  Mr. Schamel further demonstrated a troubling lack of preparation and diligence throughout the recent life of this case.  To that end, both Defendant Paitsel and Defendant Bailey, himself, consented to counsel Schamel's motion.  Consequently, the Court made the difficult choice to grant the Motion to Withdraw.  *See* Local Rule 44.5(d) (providing circumstances when Court may deny motion to withdraw in criminal case); *United States v. Kelly*, No. 87-cr-0008, 1986 WL 17592, at *1 (D.D.C. Aug. 26, 1987) (granting motion to withdraw where client's intransigence prevented counsel from adequately preparing for trial).

Counsel Schamel has twice previously moved the Court to continue the trial date in this case.  As the Court explained at more length in its November 29, 2021 [143] Order denying Defendant Bailey's [141] Motion to Continue the trial date, this criminal case has been pending against both Defendants since May 24, 2019, more than thirty months ago.  It was first set for trial on September 14, 2020.  On April 30, 2020, the Court set a new trial date of May 26, 2021 due to the COVID-19 pandemic.  Second Amended Pretrial Scheduling Order at 2, ECF No. 63.  Due to scheduling conflicts and the challenges posed by the ongoing pandemic, the Court continued the trial date a second time to September 7, 2021.  Minute Order (Mar. 12, 2021).

On August 27, 2021, less than two weeks before trial, counsel Schamel moved to continue the trial date to January, citing, broadly, concerns surrounding the transmissibility of COVID-19. *See generally* Mot. to Continue, ECF No. 120 (Aug. 27, 2021).  On September 1, 2021, the Court continued the trial date, but not because of the concerns raised by Mr. Schamel's motion.  Rather, the illness (believed at the time to be COVID) of counsel for Defendant Paitsel necessitated a

continuance to December 1, 2021.  Order at 3, ECF No. 128 (Sept. 7, 2021).     As the Court

explained in its order denying counsel Schamel's August 27 motion, "the Court cannot delay

criminal proceedings indefinitely.  Indeed, Congress has made clear by statute that the public has

a salient interest in the timely administration of criminal trials," even during a pandemic.[1]  *Id.*

      While this case was pending, counsel Schamel entered an appearance in *United States v.*

*Peter Bolos*, 2:18-cr-140 (E.D. Tenn.) (Greer, J.) ("Tennessee trial") on June 4, 2021.  Motion for

Leave to Appear, ECF No. 359.  At the time of his appearance, Mr. Schamel was on notice that

the Tennessee trial was set to begin on October 18, 2021, for approximately five weeks.   On

September 22, 2021, and without informing this Court, Mr. Schamel filed a motion to continue the

Tennessee trial to January 2022, apparently ignorant of a separate trial before Judge Greer in

January 2022.[2]  *See* ECF No. 424.  This motion to continue, as with counsel Schamel's August 27,

2021, motion to continue before this Court, advanced various concerns regarding COVID-19

transmissibility.    ECF No. 424 at 1-6.  The motion also informed the court of Mr. Schamel's

client's recent COVID-19 symptoms.  *Id.* at 6-7.   After Judge Greer denied his motion to continue

on generalized COVID grounds, Mr. Schamel made a battery of additional filings representing

that his client's health was worsening to the extent that Mr. Schamel could not effectively prepare

for trial with his client.  *E.g.*, ECF Nos. 436, 442, 443, 446, 447, and 451.  In none of these filings

did Mr. Schamel inform Judge Greer of the trial in this case, then set for December 1, 2021.

Without realizing the conflict, Judge Greer continued the Tennessee trial—set for five weeks—for

two weeks to November 1, 2021.  *See* Order, ECF No. 453 (Sept. 30, 2021).

---

[1]  The U.S. District Court has made concerted efforts to protect the health and safety of those involved in trial.  As the Court explained, these actions include regularly testing the airflow in courtrooms, mandatory masks at all times, seating six feet apart counsel, parties, and specifically the jury in courtrooms.

[2]  This motion was also filed under seal, resulting in additional logistical challenges in acquiring a copy of the motion from the Clerk's Office at the United States District Court for the Eastern District of Tennessee.

Counsel Schamel did not inform this Court or Judge Greer of this scheduling conflict for two weeks.  Notice, ECF No. 129 (Oct. 13, 2021); Notice, ECF No. 492 (Oct. 13, 2021).  After that delay, and as Chambers subsequently informed the parties via email, the Court alerted Judge Greer to the scheduling conflict.  The Court then worked proactively with Judge Greer to address the conflict.  Because Judge Greer assured the Court that the trial in Tennessee would be completed prior to December 3, 2021, the Court vacated the December 1 and December 2 trial dates and ordered the parties to appear for trial at 8:00 AM December 3, 2021, expecting to engage in *voir dire* of the jury panel, who had been informed of the delay.  Order, ECF No. 145 (Nov. 29, 2021).[3] Jury deliberation in the Tennessee trial began on December 1, 2021, and the jury returned a guilty verdict as to all counts on December 2, 2021.  ECF No. 661.

At 3:44 PM on December 2, 2021, Chambers asked the parties via email to respond to a particular change to the Court's proposed *voir dire*, cc'ing Mr. Schamel and his co-counsel.  At 7:33 PM, Mr. Schamel represented that he did not "see[] [any] emails as I was driving" in an email response to Chambers.  In fact, Mr. Schamel had been speaking with the Government via phone seeking their consent to the Motion to Withdraw (which, presumably, was being drafted during the same car trip).  *See* Resp. to Mot. to Withdraw, ECF No. 148, at ¶ 1 (Dec. 2, 2021).  Mr. Schamel filed his Motion to Withdraw at 5:17 PM that day.

The Court held a hearing on Mr. Schamel's Motion to Withdraw at 8:00 AM on December 3, 2021.  During the hearing, Mr. Schamel offered only one scheduling proposal that might, he said, ensure effective assistance of counsel:  jury selection beginning December 6, his preparation

---

[3]  The original trial plan was to conduct *voir dire* in the Ceremonial Courtroom, which would accommodate up to fifty of the sixty prospective jurors seated six feet apart, over the course of December 1 to December 3.  Given the difficulty of securing the Ceremonial Courtroom, even for criminal jury selection, the Court was to share the Ceremonial Courtroom with two other judges.  With this schedule, there would be two, uninterrupted weeks of trial before the Christmas holiday.  This plan ensured the trial would be completed by the end of December.

for trial the rest of that week, and the trial continuing on December 13. Trans. at 27. Before

turning to the specifics of his proposal, the Court asked Mr. Schamel to explain to the Court what

preparation he had done so far and what work needed to be done to ensure effective assistance of

counsel. Trans. at 13.

Mr. Schamel represented that he performed the following work during the summer of 2021:

**Mr. Schamel**: I will tell Your Honor since getting into this case – I don't recall the date – up until September, we've had – I'd have to go back and look at my bills and notes a number of meetings with Mr. Bailey. I've had meetings with Mr. Benowitz, both telephonically – and I don't know if we have met in person, candidly, on this case at all because of COVID. I certainly met with Mr. Bailey, as codefendant counsel. Ms. Jara and I have looked and have had assistance with junior lawyers on the research on some of the issues we would raise on the defense . . . We have looked into some of the background of a couple of the witnesses. [And] we have reviewed . . . the [discovery] that has been turned over.

Trans. at 14. As September neared, however, Mr. Schamel began to neglect the case:

**Mr. Schamel**: . . . As then you recall, there was a period of time where we really weren't talking to Mr. Bailey at all leading up to the September date because of the tragic loss of his mother. And then Mr. Benowitz was also sick. Se we had a loss of contact there going into that September date. . . .

**The Court**: Okay. Were you prepared if the case had gone forward in September or not? . . . . Mr. Benowitz's request to move it was just a few days before the September date.

**Mr. Schamel**: We would have been in a wind sprint. If Mr. Benowitz had not gotten sick, and we had all been able to spend that time together, I think we would have been ready for jury selection

Trans. at 16-17. As for preparation between September and December 3, 2021:

**Mr. Schamel**: Your Honor, I am getting passed notes [from co-counsel and Mr. Benowitz] about things I just don't remember because I frankly haven't looked at the case in six weeks.

**The Court:** You haven't looked at it at all?

**Mr. Schamel**: Your Honor, *I have had one conversation with Mr. Bailey. One in person since September.* It was to touch base with him and let him know I was going to be out of pocket in this case in Tennessee, which was going to be all-consuming. I had one telephone

conversation with him – that was in or around the time we came back in front of Your Honor and we talked about this was going to be a problem . . .

*And then on Thanksgiving morning I had a telephone conversation with Mr. Bailey, which is the only time I've talked to him since this last court date until today when he walked into the courtroom.*

So since September, I've had a couple of emails with the government telling them that this problem was coming.  I have had one conversation with another lawyer . . . I've talked to Mr. Benowitz I think twice.

Trans. at 18-22.  (emphasis added).  From that time, Mr. Schamel went on to explain that he had not reviewed any discovery in this case, nor had he reviewed the Government's trial brief, filed October 20, 2021, discussing the admissibility of the Government's exhibits for trial as well as identifying potential Government witnesses.  Moreover,

**Mr. Schamel**:  I haven't met with Mr. Bailey [in advance of trial].  I haven't prepared with Mr. Bailey.  We haven't had any discussions about what we are looking for in jurors or what jury selection is like.  We haven't talked about any of the exhibits.  I haven't gone through them with Mr. Bailey.  I haven't met with Mr. Benowitz, with whom we are going to be engaged in jury selection.

Trans. at 20.  The Court notes that that there *are* materials from earlier in the life of the case that have remained fairly constant.  For instance, the parties proposed their voir dire and jury instructions in July 2021.  And Mr. Schamel could have discussed jury selection with Mr. Benowitz in advance of the September trial date.  Nevertheless, the question for the Court is not whether Mr. Schamel might have prepared differently, but whether the *lack* of preparation would render his representation deficient within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984) if he had continued with jury selection on December 3, 2021.

On that question, the Court agrees that counsel's neglect of his client and this case is constitutionally deficient, and that, as such, the Court should grant the Motion to Withdraw.  The Court is loath to grant a motion to withdraw on the basis of alleged ineffectiveness, because the court "presume[s] that the lawyer is competent to provide the guiding hand that the defendant

needs." *See United States v. Cronic*, 466 U.S. 648, 658 (1984).  Nevertheless, the court should be troubled when, as here, an attorney's representation has or will become a "complete denial of counsel." *Id.* at 659.  This is so because "of all the rights than an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. McLaughlin*, 164 F.3d 1, 17 (D.C. Cir. 1998) (Tatel, J., dissenting) (cleaned up).  Here, Mr. Schamel has discussed this case with his client no more than twice in the past two months, has not read the Government's trial brief or any other pleading filed in the last two months, and has evidently barely looked at this case in general in the past two months, such as reviewing 302 reports (all of which Mr. Schamel was not sure he had ever reviewed).

Still, as the Court of Appeals has explained, *Cronic* claims are particularly difficult to state, as they are "'reserved for situations in which counsel has entirely failed to function as the client's advocate.'" *United States v. Bell*, 795 F.3d 88, 94 (D.C. Cir. 2015) (quoting *Florida v. Nixon*, 543 U.S. 175, 189 (2004)) (collecting cases).  Generally, a *Cronic* claim is of the sort where an attorney slept through trial.  *E.g.*, *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (unconscious attorney presumptively prejudicial if unconscious during trial). Even the *Cronic* court, for example, did not find per se deficient representation where the defense counsel was quite young, had only twenty-five days to prepare versus the Government's four-and-a-half years, the attorney did not specialize in criminal law, and it was his first jury trial.  466 U.S. at 649-50.

This is why, as the Court explained in its November 29, 2021 Order, the Court found it difficult to believe that Mr. Schamel could permit himself and his team to be so utterly unprepared as to preemptively commit ineffective assistance of counsel.  Mr. Schamel is, in his firm's words, a sophisticated attorney with more than 20 years experience, practicing at a sizable, well-resourced

firm.  Order at 2, ECF No. 145.  The idea that he would permit himself and his litigation team to do so little pretrial preparation struck the Court as difficult to believe.  The Court does not doubt that the Tennessee trial was demanding for Mr. Schamel, but attorneys appearing before this Court regularly manage multiple trials in close temporal proximity to one another.  Nevertheless, those are Mr. Schamel's representations, and his lack of preparation constitutes ineffective assistance of counsel.  *See Farrell v. United States*, 391 A.2d 755, 762 (D.C. 1978) (holding failure to interview a number of witnesses and not to meet with client until a few days before trial would be constitutionally deficient).

Similar cases are all the more difficult to locate because a continuance is generally a panacea for preparedness-related ineffectiveness claims.  Mr. Schamel, however, only proposed later dates in December.  As the Court explains below—and has explained to the parties numerous times—any later December date is not feasible.

Finally, as a general matter, a court should grant a motion to withdraw in a criminal matter where, among other things, requiring the attorney to continue his representation would unduly prejudice the Court or the parties.  *See* Local Rule 44.5(d) (providing circumstances when Court may deny motion to withdraw in criminal case); *United States v. Kelly*, No. 87-cr-0008, 1986 WL 17592, at *1 (D.D.C. Aug. 26, 1987) (granting motion to withdraw where client's intransigence prevented counsel from adequately preparing for trial).

## II.    Logistical Challenges During COVID-19

Mr. Schamel further represented that with an additional continuance to December 6 for jury selection, he would have been ready to engage in *voir dire*.  Putting aside whether one business day would make a meaningful difference to his prior record of neglect and that *voir dire* could even be completed in a day, the Court explained that any additional continuance would make a

December trial untenable.   As the Court explained in its November 26, 2021 Order, the Court has imposed a number of COVID-related restrictions to ensure the health and safety of those involved in trials.   Throughout the courthouse, the Court requires six feet of distance between counsel, the parties, and individual jurors.   As a result, *voir dire* can only be conducted in the Ceremonial Courtroom, which even then can accommodate only fifty of the sixty jurors on a special panel  *See In re: Limited Resumption of Criminal Jury Trials in Light of Current Circumstances Relating to the COVID-19 Pandemic*, Standing Order No. 21-47 (BAH) (D.D.C. Aug. 25, 2021), at 6.   In addition to the courtroom in which the trial will occur, two more courtrooms must be reserved: one as the jury room and one as an overflow room for the public.   The court maintains a master trial calendar to assist judges as they compete for a finite number of courtrooms.   Courtrooms, and particularly the Ceremonial Courtroom, are thus reserved months in advance while the courthouse continues to operate during the COVID-19 pandemic.   The courtroom where the trial itself is conducted has the jury seated in the gallery to allow for six-foot spacing between jurors.   If more than fourteen jurors are to be seated, the Ceremonial Courtroom must be used for the trial.

Beyond COVID-19 challenges, the court also takes special steps to assemble a *voir dire* panel for trials that may last longer than two weeks. For these trials, the Jury Office assembles a special panel of sixty jurors.   Notice is sent out in advance of the trial date to a pool of prospective jurors that requests that they indicate when they will be unavailable—in this case, the month of December.   Those requests for excusals are then either granted or denied by the Court.   Generally, this process is begun 8-10 weeks in advance of trial.   As such, if the trial extended beyond December, the court would likely have to assemble a new panel.   The Court further concluded that a separate *voir dire* of the current panel of sixty prospective jurors regarding their availability in January would be counterproductive, time-consuming, and would not accommodate Mr.

Schamel's proposed trial plan.  Such a result would mean the trial would have to start all over again during, at the earliest, March 2022.

The dates proposed by Mr. Schamel would make such an unacceptable result likely.  In this Court's experience, jury selection can take up to three days.  As a result, if jury selection had been continued to December 6, then the panel might not have been seated by December 9, not providing Mr. Schamel the time he requested to prepare for trial.  Resuming the trial on December 13, 2021 would leave eight-and-a-half days before the Christmas holiday.  As the Government represented in the motions hearing, the Government intended initially to call seven to nine witnesses, reserving the right to call additional witnesses as necessary.  Trans. at 37.  If that were to be necessary, the Government's case could take much longer than the four to five days that the Government suggested as the length of their direct testimony.  *See id.*  Although counsel for Defendants Paitsel and Bailey previously represented that they planned to call up to eight witnesses between them, neither Mr. Benowitz nor Mr. Schamel offered any indication at the hearing that they would rest their cases in time for a December verdict.  As such, Mr. Schamel's proposal was unworkable.

In essence, Mr. Schamel's motion to withdraw offered the Court two choices:  (1) proceed with constitutionally deficient representation or (2) adopt a logistically untenable trial schedule.  As no party offered any other proposal that might have both remedied Mr. Schamel's ineffectiveness and permitted the Court to move forward with a December trial, the Court instead granted Mr. Schamel's Motion to Withdraw.

The U.S. District Court for the District of Columbia is committed to the efficient and effective administration of justice.  At the same time, the Court is equally committed to safeguarding the health and safety of all those involved in criminal trials.  Mr. Schamel's dilatory

motion to withdraw further complicated the Court's delicate balancing of these interests with the rights of the criminal defendants before it.  It also inconvenienced the sixty District of Columbia residents who appeared for jury service and incurred $2,320 in costs upon the Court.  Weighing the foregoing interests and Mr. Schamel's representations, the Court concluded that it should grant Mr. Schamel's Motion to Withdraw.

Dated: December 7, 2021                              \_\_\_\_\_/s/_____
                                                                    **COLLEEN KOLLAR-KOTELLY**
                                                                    United States District Judge