UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

BRIAN WINSTON BAILEY, *et al.*,

Defendants.

Criminal Action No. 19-156 (CKK)

**MEMORANDUM OPINION AND ORDER**
(September 22, 2022)

Before the Court is Defendant Bailey's [207] Motion in Limine with Respect to Government Exhibits and [212] Motion in Limine with Respect to New Government Exhibits. As the Court has explained in prior minute orders, all pre-trial briefing was due August 5, 2022. Despite that firm deadline, Defendant Bailey filed two additional evidentiary motions on August 29, 2022 and September 8, 2022. After resolving the latest evidentiary motion, which the Court assumed would be the last, counsel for Defendant Bailey informed the Court at the pretrial conference on September 19, 2022, four days before trial, that Bailey would file the [207] motion in limine, but only as to one issue. In fact, the [207] motion moves to exclude four categories of exhibits—thirty-four in total—on several legal theories. The [212] motion responds to recent, additional Government exhibits identified on September 20, 2022 as a result of the Court's September 20, 2022 [208] Order modifying its tentative jury instructions. As a result, the Court set an expedited briefing schedule and has reviewed each exhibit *in camera* and in total.

Upon consideration of the briefing and *in camera* review of the exhibits themselves, the Court shall **DENY IN PART AND HOLD IN ABEYANCE IN PART** Defendant Bailey's [207] Motion in Limine with Respect to Government Exhibits and **DENY** Defendant Bailey's [212] Motion in Limine with Respect to New Government Exhibits. Specifically, the Court

1

**OVERRULES** Defendant's objections to Exhibits 3B, 3C, 3D, 7A, 7B, 8, 101A, 101B, 101C, 101D, 101F, 101G, 102A, 102B, 102C, 105A, 105B, 105E, 106A, 106F, 106H, 107A, 108A, 108E, 108F, and 111F.  The Court **OVERRULES** Defendant's objections to Exhibits 111A and 111B, but will read a limiting instruction to the jury.  The Court **HOLDS IN ABEYANCE** Defendant's objections to Exhibits 6A, 6D, 110A, 110B, and 111G pending proffered testimony from the Government during its case-in-chief.

Before turning to each of Defendant's evidentiary arguments, the Court briefly reiterates that the Government has charged Defendant Bailey by indictment with conspiracy in violation of 18 U.S.C. § 371 and bribery in violation of 18 U.S.C. § 201(b)(1)(C).  The Government alleges two conspiracies:  (1) a conspiracy between Bailey and Dawne Dorsey to unlawfully obtain confidential government records known as Tenant Opportunity to Purchase Act (TOPA) Notices, and (2) a conspiracy between Bailey and co-Defendant Paitsel to unlawfully obtain confidential contact information on tenants identified in the TOPA notices.  In the Court's last two orders, the Court held that the Government must identify statutes, regulations, and/or policies applicable to Dorsey and Paitsel to convict Bailey of subsection 201(b)(1)(C) bribery.

Now, Defendant Bailey moves to exclude at least four categories of exhibits.  First, Defendant Bailey moves to exclude all statements by Dorsey as hearsay unless Dorsey herself testifies at trial that she conspired with Bailey.  Second, Defendant moves to exclude certain emails from others to Bailey as hearsay.  Third, Bailey moves to exclude exhibits containing government confidentiality and anti-graft policies as (1) hearsay, (2) irrelevant, and (3) inadmissible without expert testimony.  As a final category in the Court's analysis, Defendant Bailey moves to exclude certain other records, including law-enforcement database guidelines and a summary chart of TOPA notices Dorsey allegedly provided Bailey on similar grounds.

They Court will either deny these objections or hold them in abeyance pending the Government's case-in-chief.

## I.      Co-Conspirator Statements

Defendant first argues that the Court should exclude all statements by alleged co-conspirator Dorsey unless Dorsey herself testifies to the existence of a conspiracy between herself and Bailey. Because the Court concludes that the relevant proffered exhibits, all of which are admissible, establish a conspiracy between Dorsey and Bailey by a preponderance of the evidence, the Court shall hold admissible all the statements by Dorsey to which Defendants have specifically objected. These statements are in the hundreds. Exhibit 3B alone contains 2,931 text messages between Bailey and Dorsey alone. The Court has reviewed each message, which was particularly time-consuming.[1]

Defendant does not object to the admissibility of his own statements, which are admissible non-hearsay admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A). Rather, Defendant seeks to exclude all statements by alleged co-conspirator Dorsey on the theory that the Government cannot demonstrate a conspiracy between Dorsey and Bailey without Dorsey's live testimony. Although co-conspirator statements are generally admissible non-hearsay when they are "made by the party's co-conspirator during and in furtherance of the conspiracy," Fed. R. Evid. 801(d)(2)(E), Defendant correctly notes that the Court may only admit such statements upon an antecedent finding of such a conspiracy between

---

[1] For ease of reference, the Court simply refers the parties to that exhibit and the individual texts marked by counsel for Defendant Bailey in a copy of the exhibit provided to Chambers *ex parte* and *in camera*. Because the Government has represented that they have received an identically-marked copy of the exhibit, the Court will not list each message by number or time, which, again, are in the hundreds.

3

the declarant and the party opponent. Relying on Bailey's own statements and Dorsey's non-assertive conduct, the Court has no difficulty making such a finding here.

That antecedent finding is governed by Federal Rule of Evidence 104(b); the Court must find by a preponderance of the evidence that (1) a conspiracy existed, (2) that the defendant and the declarant were involved in that conspiracy, and (3) that the declarant's statement was made in furtherance of that conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009). In making this determination, the Court "must find that the Government has offered 'independent evidence' apart from the statements themselves that a conspiracy exists and that the Defendant and the declarant were involved in the conspiracy.'" *United States v. Lorenzana-Cordon*, Crim. A. No. 03-cr-331-13-14 (CKK), 2016 WL 11664060, at *1 (D.D.C. Jan. 21, 2016) (quoting *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006)).

Independent evidence can take any number of forms, including contemporaneous acts suggestive of the charged conspiracy and/or corroborative of the contents of the purported co-conspirator statements. *See United States v. Gatling*, 96 F.3d 1511, 1520-21 (D.C. Cir. 1996) (involving testimony from others and bank deposits). Pursuant to Federal Rule of Evidence 104(a), the Court is not limited to admissible evidence in answering the antecedent question of whether the declarant was engaged in a conspiracy with the defendant. *See United States v. Khatallah*, 278 F. Supp. 3d 1, 4-5 (D.D.C. 2017) (citing *Bourjaily*, 483 U.S. at 176); *see also generally* Stephen A. Saltzburg, *et al.*, *Federal Rules of Evidence Manual* § 801.02[6][g][ii][C] (12th ed. 2019) (collecting cases). That said, here, the Court need not rely even on inadmissible

4

evidence to find a conspiracy and conclude that Dorsey's statements in Exhibits 3B, 101A, 101F, 102A, 102B, 102C, and 106A are admissible non-hearsay co-conspirator statements.[2]

Before turning to evidence of conspiracy, a brief summary of each exhibit is necessary. As noted above, Exhibit 3B contains thousands of text messages between Bailey and Dorsey and hundreds of messages from Dorsey to which Defendant objects. These messages confirm receipt of Bailey's request for documents, pledge that Dorsey will soon send the requested documents, or try to arrange payment for sending the documents. *E.g.*, Text 470[3] ("I will review [Bailey's request for documents on 211 Morgan Street NW] once I get in [to the office]"); Text 267 ("I'm about to email the notices"); Text 529 (in response to Bailey telling Dorsey that he would "give [her] cash" after Dorsey did not "cash [her] check," Dorsey confirming "ok[,] [w]hat time do you [Bailey] want me [Dorsey] to come" to Bailey's house). Exhibit 101A contains an email with the subject line "RE: TOPA Notice" from Dorsey to Bailey informing Bailey "[j]ust a heads up, you will receive multiple emails from me." In Exhibit 101F, which contains multiple TOPA notices, Dorsey told Bailey, "I just tried sending it [the TOPA notices] from my personal email. Let me know if it came through. The email address is [redacted]."

Exhibit 102A contains emails between Bailey and Dorsey in which Bailey tells Dorsey that he "could give you [Dorsey] [$]10,000" for TOPA notice and similar documents. *Id.* at 2. Dorsey assures Bailey that she has furtively asked another government agency to "check their

---

[2] As further discussed below, Defendant also characterizes Dorsey's "statements" in Exhibits 101B, 101C, 105A, 105B, 108A, 108F, 110A, and 111F as "hearsay" without testimony from Dorsey. Each of these exhibits contains no statements from Dorsey. Rather, they are emails conveying TOPA notices as attachments. The act of conveying ill-gotten proceeds of a conspiracy is not, as the Court explains further below, a statement, but rather an overt act in furtherance of the conspiracy.

[3] The exhibit assigns each text message a number, so the Court cites to each message by number for ease of reference.

records." *Id.* In Exhibit 102B, Bailey complains to Dorsey that Dorsey has not been sending Bailey requested notices quickly enough. Dorsey responds, "I understand what you're saying . . . I've been trying to send them as we got them . . . ." Dorsey responds to a similar complaint from Bailey in Exhibit 102, assuring him that she "does apologize" to him because she "didn't realize that the files [she] was sending were late." *Id.* Finally, Exhibit 106A features another email in which Dorsey sent Bailey several TOPA notices. She provides additional contact information for tenants at one other property in addition to the property's sale price.

As an initial matter, the Court agrees with the parties that these statements are in furtherance of the conspiracy. Each conveys unlawfully-obtained TOPA notices, discusses when they would be sent, discusses the fruits of profitability of the scheme, or discusses payments as a result of the scheme. *See, e.g.*, *Lorenzana-Cordon*, 2016 WL 11664060, at *1 (involving statements regarding cocaine deliveries and payments for deliveries); *United States v. Tom*, 330 F.3d 83, 93-94 (1st Cir. 2003) (involving statements of "reassurance" to convince co-conspirators to continue with a drug conspiracy); *United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) (involving "[s]tatements that describe[d] past events" where they "ke[pt] coconspirators abreast of current developments and problems facing the group" of conspirators). Assuming *arguendo* that each statement would be offered for the truth of the matter asserted, they therefore qualify as co-conspirator statements.

To reiterate, Defendant does not object to the admission of his own statements; nor could he, as they are admissible party admissions under Federal Rule of Evidence 801(d)(2)(A). At a minimum, his own statements, absent any statement or act by Dorsey, establish by a preponderance of the evidence a conspiracy between the two. Among many other statements, the Court relies on the following messages from Bailey to Dorsey:

6

- A December 13, 2017 text message from Bailey to Dorsey "apologiz[ing]" for failing to pay Dorsey by the agreed upon time and assuring Dorsey that Bailey "could give [Dorsey] half tomorrow [while he] wait[ed] on a check to hit [his] account. Exh. 3G, Text 527.

- An August 23, 2017 text message from Bailey to Dorsey asking "[h]ow much [she would[ want to expedite 2 [condo conversion] applications [] for the guys who [are] still trying to purchase 105 Rhode Island Ave." Bailey assures Dorsey "[t]hey'll definitely pay you for sure." Exh. 3G, Text 916.

- An April 3, 2017 text message from Bailey to Dorsey asking Dorsey to "resend 2420 Chain Bridge Rd" and asking her to illicitly work to delay TOPA approval on another property. Exh. 3G, Text 1615.

- A February 1, 2017 text message from Bailey to Dorsey telling Dorsey that Bailey would "have some money 4 [her] on Saturday" and telling Dorsey to "stop by" to receive the payment. Exh. 3G, Text 1957.

- The following text message from Bailey to Dorsey on August 8, 2017:

  > I've paid you even when I'm not being paid. I havent made any money and you still got your money. You dont even send all the files and I was still paying u. I've paid lawyers and other people. You got extra money when a deal closed. You're the Only person actually making money Dawne. The fact that anyone is questioning if im going to pay you is some straight bullshit.
  > Exh. 3G, Text 2346.

- A May 9, 2016 text message from Bailey to Dorsey informing Dorsey "[w]e got some money coming to us[.] [I]f we can create a pipeline of payments it could be very lucrative. If its not a risk to send everything send it because we're gonna get paid."

- The following email from Bailey to Dorsey on June 13, 2016:

  > I want to sit and speak with you regarding our arrangement. You sending files isn't working the way I thought it would. Initially I was getting files daily . . . The files are time sensitive . . . . I'm paying you very month consistently with the exception of June . . . .
  > Exh. 102B.

Together, these messages establish an antecedent conspiracy.

Additionally, the Court relies on Exhibits 101B, 101C, 101D 105A, 105B, 108A, 108F, 110A, and 111F. These exhibits are emails from Dorsey to Bailey attaching TOPA notices and

7

other government records or emails from Bailey to others forwarding those emails from Dorsey to Bailey. The parties suggest that these emails are hearsay. They are not hearsay.

Although attaching documents to an email is not a "statement," there may be some argument that the act of attaching and conveying those documents is "assertive conduct" that otherwise qualifies as hearsay. To begin with broad principles, hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c); *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002). As such, hearsay covers statements and, in some cases, assertive conduct. *United States v. Long*, 905 F.2d 1572, 1580 (D.C. Cir. 1990) (Thomas, J.). For conduct to be assertive, the declarant must intend to convey a purported fact, and the proponent must seek to admit that intended, purported fact for the truth of the matter that was asserted by the conduct. *See id.* For example, where a declarant nods to confirm the answer to a question, the act of nodding is assertive insofar as it answers the question posed. *See, e.g.*, *United States v. Katsougrakis*, 715 F.2d 769, 775 (2d Cir. 1983) (on charge of arson, witness identifying suspect via a nod was assertive conduct and hearsay). Actually conveying the object of the conspiracy, however, is not assertive, particularly where the proponent does not seek to introduce the conveyance as evidence that the thing conveyed was, in fact, the thing promised. *See United States v. Day*, 591 F.2d 861, 886 (D.C. Cir. 1978) (witness handing slip of paper to decedent in murder scheme prior to decedent's death not hearsay, nor were the slip of paper's contents); *see also, e.g.*, *United States v. Cameron*, 762 F. Supp. 2d 152, 157 (D. Me. 2011) (in child pornography case, conveyance of illicit images was not hearsay) *rev'd in part on other grounds* 699 F.3d 621 (1st Cir. 2012).[4] Here, these exhibits show Dorsey sent Bailey what he

---

[4] As commentators have explained, where a declarant takes an act without an intent to prove or show a fact, there is no risk of deception, the main concern of the rule against hearsay. *E.g.*, 2 McCormick on Evid. § 250 (8th ed. 2022); *Saltzburg*, *Federal Rules of Evidence Manual* §

allegedly paid for. The act of conveying those materials, i.e., sending the email itself, is not assertive conduct falling within the realm of hearsay. Alternatively, even were the emails hearsay, having found a conspiracy between Bailey and Dorsey, they would be admissible as statements by a co-conspirator in furtherance of the conspiracy. As such, the Court shall overrule Defendant's objections to these exhibits, 3B, 101B, 101C, 101D, 105A, 105B, 108A, 108F, 110A, and 111F.

## II.     Additional Hearsay Objections

Next, Defendant makes hearsay objections to an assortment of other exhibits: 3C, 3D, 105B, 105E, 106F, 106H, 107E, 108E, 110A, 110B, 111A, and 111B. The Court addresses each in turn.

Exhibit 3C reflects text messages between Bailey and Odette Abraham, evidently one of Dorsey's former coworkers. Because the Government only intends to introduce Bailey's statements as a party opponent, admissible under Federal Rule of Evidence 801(d)(2)(A), and agrees to redact all of Abraham's messages, there is no hearsay issue with Exhibit 3C. Exhibit 3D features text messages between Bailey and Alvin Rice, apparently a former business associate of Bailey. The Government represents that it intends to use statements by Rice only as recorded recollections to refresh Rice's memory should Rice testify. Pursuant to Federal Rule of Evidence 803(5), a record on which the testifying witness once knew about but cannot recall well, was made or adopted at the time when the matter was fresh in the witness's memory, and

---

801.02[1][c]. As McCormick notes, when one opens an umbrella to stay dry during a rainstorm, the act of the opening of the umbrella does not intend to make an assertion that it is raining, though the fact that it is raining may of course be inferred from the opening of the umbrella. More pithily put by Saltzburg, "non-assertive conduct is usually more reliable than the ordinary out-of-court statement, because by engaging in conduct the declarant has usually risked action of the correctness of his belief—he has put his money where his mouth is." Over several occasions, Dorsey did the same, risking payment from Bailey by sending what were, in fact, TOPA notices.

accurately reflects the witness's knowledge is an exception to the hearsay rule. However, the record may not go to the jury and may instead only be read into evidence. *Id.* As such, the Government must redact Rice's messages on the exhibit itself should it be admitted into evidence before the exhibit goes to the jury.

In Exhibit 105B, Bailey forwards to Paitsel TOPA notices and associated documents that Dorsey sent Bailey. As explained above, because the act of conveying the notices is non-hearsay, there is no hearsay within hearsay. Even if there were, such statements would fall within the co-conspirator definition of non-hearsay.

Exhibit 105E poses a different problem. In that exhibit, a manager of a title insurance company emails to Bailey certain closing documents (attached to the email). The embedded email from Bailey to the manager is admissible as party admissions for the reasons described above. Additionally, the attachments are admissible because they reflect an interest in real property. Fed. R. Evid. 803(15) (excepting "statement[s] contained in a document that purport[] to establish or affect an interest in property . . ."). In any event, the Government does not intend to introduce the statements by the manager to Bailey for the truth of the matter asserted, but rather to illustrate Bailey's state of mind in furthering the alleged conspiracy, ECF No. 211 at 5, rendering the email non-hearsay, *see United States v. Safavian*, 435 F. Supp. 2d 36, 45 (D.D.C. 2006). For the same reasons, the real estate transactions described in Exhibit 106F, Exhibit 107H, Exhibit 107E, and Exhibit 108E, featuring exchanges between other real estate developers and/or title insurance agents and Bailey, are admissible partially as non-hearsay and partially as an exception to hearsay under the interest-in-real-property exception. *See id.*

Next, Defendant objects to Exhibits 110A and 110B, in which Dorsey advised members of the public that they must submit a FOIA request in order to obtain TOPA notices. The

Government avers that it seeks to admit these exhibits to show Dorsey's state of mind (i.e., that she believed she had a duty to require those requesting TOPA notices to submit a FOIA request) rather than the truth of the matter asserted (i.e., that as a matter of law and office policy, those requesting TOPA notices must submit a FOIA request). Because these exhibits are particularly dependent upon the potential foundation the Government may lay and Dorsey's own uncertain testimony, the Court shall hold the objections to these exhibits in abeyance.

Finally, the Court shall overrule Defendant's objections to Exhibits 111A and 111B, but shall read a limiting instruction to the jury. These two exhibits are cooperation agreements between Alvin Rice, a cooperating witness, and the Government. Although it is not clear what ultimate evidentiary purpose these exhibits may serve, the Government represents that it will introduce the agreements only to illustrate Rice's state of mind should he testify. Because they will not be offered for the truth of the matter asserted, they are not hearsay. That said, should the Government move them into evidence, the Court will read a limiting instruction to the jury that they shall not consider the exhibits for the truth of the matters asserted therein.

### III.    Statutes, Regulations, and Ethics Policies

Next, Defendant objects on hearsay, relevance, and prejudice grounds to each of the written statutes, regulations, or ethics policies the Government might use to establish a "lawful duty" within the meaning of the charged bribery offense. These objections fail.

As to hearsay, Defendant does not maintain that the regulations or statutes themselves are hearsay.[5] Agency manuals are admissible pursuant to the exception for public records. Fed. R.

---

[5] Defendant seems to erroneously maintain that a portion of 5 C.F.R. § 2635.203, part of Exhibit 7A, is hearsay because they are not, in fact, part of the regulations. Even a cursory read of the regulatory subsection would indicate that the objected-to portions, examples indicating appropriate and inappropriate behavior by Department of Justice employees, would show that these examples are part of the regulation. It also appears that Defendant accidently (i.e., by

11

Evid. 803(8)(A)(1) (excepting "[a] record or statement of a public office if . . . it sets out . . . the office's activities"); *see also, e.g.*, *United States v. Gold*, 743 F.2d 800, 817 (11th Cir. 1984) (holding admissible manuals prepared by Department of Health and Human Services for the processing of Medicare claims); *see also generally Chesapeake and Del. Canal Co. v. United States*, 250 U.S. 123 (1919) (discussing history and purpose of exception). As such, Exhibits 8 and 111H, agency manuals for Department of Justice components and District of Columbia government agencies, respectively, are not hearsay.

Defendant's relevance and prejudice objections also fail. Defendant argues that the statutes, regulations, and policies identified cannot, as a matter of law, constitute a "lawful duty" for either Paitsel or Dorsey within the meaning of the charged bribery subsection. Because the existence of these policies, even if not specific to either Paitsel or Dorsey, makes it "more or less probable" that each had a lawful duty to maintain the confidentiality of the documents for which Bailey allegedly paid them, they are relevant. *See* Fed. R. Evid. 401(a) ("Evidence is relevant if [] it has any tendency to make a factor more or less probable than it would be without evidence[] and [] the fact is of consequence in determining the action"); *see also United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993) (noting low bar for relevance). To the extent Defendant is concerned that the jury may consider these exhibits as "lawful duties" when they are not as a matter of law, the Court will address that issue when it instructs the jury.

Altogether, the Court shall overrule Defendant's objections to Exhibits 7A, 7B, 8, 111I, and 111H.

---

scrivener's error) copied and pasted this same objection to his discussion of other exhibits. The Court disregards this error and, if and only if not in error, Defendant may renew the specific hearsay objection at trial.

**IV.    Remaining Objections**

Finally, Defendant objects to: (1) Exhibits 6A and 6D, purported guidelines applicable to Paitsel's alleged searches of law enforcement databases on Bailey's behalf; (2) Exhibit 111G, a "sign-in sheet" from what appears to have been a government training on TOPA; and (3) Exhibit 101G, a summary exhibit of the hundreds of TOPA notices Dorsey allegedly sent Bailey.

*First*, Defendant argues that the guidelines are hearsay and irrelevant. It is clear from the face of the exhibits that these guidelines apply to each search and are visible to the user of the system in advance of searching the database. As such, they are records of a regularly conducted event, which is an exception to the hearsay rule. Fed. R. Evid. 803(6) (excepting from hearsay those records "made at or near the time by—or from information transmitted by—someone with knowledge; [] . . . [that] w[ere] kept in the course of a regularly conducted activity of a business . . . [and] [where] the record was a regular practice of that activity"); *see also, e.g.*, *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (in mortgage fraud scheme, holding admissible automatically-generated local application forms). As to relevance, and as the Government concedes, the Government will have to lay a foundation establishing that Paitsel used these databases when securing information for Bailey. As such, the Court will hold in abeyance Defendant's objections to Exhibits 6A and 6D pending the Government laying that foundation via admissible evidence at trial.

*Second*, Defendant objects to Exhibit 111G on hearsay grounds. This exhibit is a "sign-in sheet" for an event entitled "Nuts and Bolts of TOPA" which was purportedly held on January 31, 2018. The Government has not explained what role this exhibit might play in its case-in-chief, and the Court cannot determine from the face of the exhibit its relevance to this case.

Without any further information about this exhibit, the Court must hold Defendant's objection in abeyance.

*Third*, Defendant asserts a hearsay objection to Exhibit 101G, which is a proposed summary exhibit showing, by time interval, the number of TOPA notices Dorsey allegedly sent Bailey. It is unclear what role hearsay might play in such a summary exhibit as it alleges a number of *acts* by Dorsey, not statements. To be sure, the Government must first lay a foundation to establish the veracity of the summary exhibit itself, but after "lay[ing] a foundation for the underlying documents, a chart summarizing them can itself be evidence under [Federal] Rule [of Evidence] 1006." *See United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008). Accordingly, the Court shall overrule Defendant's objection to Exhibit 101G.

## V.     Conclusion

For the foregoing reasons, it is hereby

**ORDERED**, that Defendant Bailey's [207] Motion in Limine with Respect to Government Exhibits is **DENIED IN PART AND HELD IN ABEYANCE IN PART**. It is further

**ORDERED**, that Defendant Bailey's [212] Motion in Limine with Respect to New Government Exhibits is **DENIED**. It is further

**ORDERED**, that Defendant Bailey's objections to 3B, 3C, 3D, 7A, 7B, 8, 101A, 101B, 101C, 101D, 101F, 101G, 102A, 102B, 102C, 105A, 105B, 105E, 106A, 106F, 106H, 107A, 108A, 108E, 108F, and 111F are **OVERRULED**. It is further

**ORDERED**, that Defendant Bailey's objections to Exhibits 111A and 111B are **OVERRULED**, subject to a limiting instruction by the Court that the jury shall not consider the contents of these exhibits for the truth of the matters asserted. It is further

**ORDERED**, that Defendant Bailey's objections to Exhibits 6A, 6D, 110A, 110B, and 111G are **HELD IN ABEYANCE** pending proffered testimony from the Government during its case-in-chief.

**SO ORDERED**.

**Dated:** September 22, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge