IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRIAN BAILEY, et al,<br><br>    *Defendant*. | )<br>)<br>)<br>)<br>)  Case No. 1:19-cr-00156-CKK<br>)<br>)<br>)<br>) |

### DEFENDANT BRIAN BAILEY'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS ONE AND TWO

To prevail on Count One (conspiracy) and Count Two (bribery), the government must prove that Ms. Dorsey had a "lawful duty" to keep the TOPA notices confidential. However, as the testimony at trial has now made clear, the Department of Housing and Community Development (DHCD)'s supposed "policy" with respect to the release of these TOPA filings was itself unlawful and violates Supreme Court precedent as to the scope and application of the Freedom of Information Act (FOIA). For this reason, the Court should grant Mr. Bailey's Rule 29 motion as to these two counts.[1] Mr. Bailey cannot be found guilty if the "lawful" duty at issue was itself unlawful.

Lauren Pair is the former director of the Rental and Sales Conversion Division at DHCD, which is the division in which Dawne Dorsey worked. She testified on the afternoon of September 28, 2022. Ex. A (9/28/22 Tr.) ("Pair Test."). She testified that DHCD had a policy that some people could get unredacted TOPA notices and some people could only get redacted TOPA notices. She testified that she told Dawne Dorsey about this policy. Mr. Bailey anticipates

---

[1] Mr. Bailey made an oral motion under Rule 29 as to the remaining counts of the indictment and will not restate those arguments here.

that the government will argue that Ms. Dorsey had a lawful duty to follow this policy, thus satisfying 18 U.S.C. § 201(a)(1)(C).

Ms. Pair testified that there are two categories of people who can get TOPA notices.

| Requesters Who Could Obtain Unredacted TOPA Notices from DHCD | Requesters Who Could Obtain Only Redacted TOPA Notices from DHCD |
|---|---|
| • The owner of the property<br>• The owner's realtor<br>• The settlement agent<br>• The third party purchaser<br>• Attorney for "any of these parties"<br>• Tenants<br>• A tenant's "counsel or representatives"<br><br>(*Id*. at 66-67) | • "an outside third party that was unconnected to the transaction without a connection to the agency"<br><br><br><br><br><br>(*Id*. at 67) |

Ms. Pair also said that tenant advocacy groups could request a copy of a TOPA notice. If that happened, Ms. Pair would "inquire about the purpose of what they were using it for" (*Id*. at 67). She explained that these tenant advocacy groups (also referred to as "community based organizations" or CBOs) could obtain an unredacted copy of a TOPA notice if "they contacted us and told us they were working with the building." *Id*. at 105. She also testified that if Dawne Dorsey gave unredacted TOPA notices to CBOs who "***did not*** say they were representing a tenant organization," this was "probably not" allowed under the policy. *Id*. at 107. The CBO had to make clear that it represented a tenant organization to obtain an unredacted copy of the TOPA notice.

Ms. Pair went onto describe her public policy reason for treating some TOPA notice requesters differently from others:

> Q. Because I believe you said part of your policy was that it had to be people that were connected somehow to the transaction to get an unredacted full copy of the offer of sale?

A. If a tenant organization -- I'm sorry. If a community-based organization that wasn't directly related to a transaction got a copy of the offer of sale, it was not as troublesome to me as an outside third party without a connection to the agency, or providing tenants with assistance, someone who could be a predator, someone who could be aggressive, someone who could contact tenants when they did not want to be contacted. The community-based organizations are there to advocate for the tenants, not for the transaction itself.

Q. Okay. So what you're saying is you had sort of a policy reason why you treated these nonprofits, these community-based organizations different than the regular public getting one of these offers of sale?

A. Yes. (*Id*. at 107).

Ms. Pair testified that "whether or not somebody had to use the FOIA process depended on who was asking for the document." *Id*. In other words, some members of the public had to use FOIA and received redacted TOPA notices; some members of the public could avoid the FOIA process and receive unredacted TOPA notices. It all depended on who was asking for the public record and Ms. Pair's view of the propriety of the purpose for which the requester would use the documents.

## **STANDARD**

"After the government closes its evidence or after the close of all evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must deny a motion for judgment of acquittal when, considering the evidence in the light most favorable to the Government, the evidence "is sufficient to permit a rational trier of fact to find all the essential elements of the crime beyond a reasonable doubt." *United States v. Kayode,* 254 F.3d 204, 212 (D.C. Cir. 2001) "In ruling on a motion for a judgment of acquittal, 'the trial court must view the evidence in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir.1985).

**ARGUMENT**

The "policy" that the government claims is the "lawful duty" in this case is unlawful because agencies may not withhold documents under FOIA based on the identity of the requester, with one very narrow exception not applicable here.[2]

As the Supreme Court has explained, "the identity of the requesting party has no bearing on the merits of his or her FOIA request." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 771–72 (1989).[3] The Supreme Court in *Reporters Committee* went on to explain that "Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest [in a particular document].'" *Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)); *Swan v. SEC*, 96 F.3d 498, 499 (D.C. Cir. 1996) ("Whether [a particular exemption] protects against disclosure to 'any person' is a judgment to be made without regard to the particular requester's identity.").

Ms. Pair explained the reasoning behind her "policy" that differentiated the requestors connected to the transaction from those unconnected to the transaction, saying that people unconnected to the transaction "could be a predator, someone who could be aggressive, someone who could contact tenants when they did not want to be contacted." Ex. A at 107. However laudatory it may be, Ms. Pair's underlying justification—and the supposed policy that arose from it—contravenes the very purpose of FOIA, which is to ensure that "[a]ll members of the public share an equal right to access to government records." *Horsehead Indus., Inc. v. U.S. E.P.A.*, 999

---

[2] The only exception to this rule is where "the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege." *Reporters Committee*, 489 U.S. at 771–72.

[3] Although the FOIA statute at issue is the District of Columbia's statute, the Court may look to federal law to interpret it. *Fraternal Order of Police, Metro. Labor Comm. v. District of Columbia*, 113 A.3d 195, 199 (D.C. 2015) ("[I]n the context of FOIA cases, we routinely look to federal law to interpret analogous provisions in our own Act.").

F. Supp. 59, 68 (D.D.C. 1998).[4] This supposed "policy" means that some members of the public (such as real estate investors or real estate developers or real estate agents) have a decidedly unequal right to access public, government records. Whatever Ms. Pair may have thought of Mr. Bailey's business plan, her views have no bearing on whether he had the right to obtain unredacted public documents just like others did. *Durns v. BOP*, 804 F.2d 701, 706 (D.C. Cir. 1986) ("Congress granted the scholar and the scoundrel equal rights of access to agency records."), *cert. granted, judgment vacated on other grounds & remanded*, 486 U.S. 1029 (1988).

Under Supreme Court precedent, agencies may not distinguish between requesters nor limit the use to which information disclosed is put. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("It must be remembered that once there is disclosure, the information belongs to the general public. There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination."). The analysis of the consequences of the disclosure of tenant names in these documents may not properly turn on the intended use of the information to contact tenants to make a profit. "[B]ecause all FOIA requesters have an equal, and equally qualified, right to information, the fact that respondents are seeking to vindicate the policies behind the Labor

---

[4] The "purpose" section of the District's FOIA statute provides that "[t]he public policy of the District of Columbia is that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." D.C. Code § 2-531. As a result, the "provisions of this subchapter shall be construed with the view toward expansion of public access and the minimization of costs and time delays to persons requesting information." *Id*. As the D.C. Court of Appeals has explained, "[o]ur Freedom of Information Act ... is designed to promote the disclosure of information, not to inhibit it." *Washington Post v. Minority Bus. Opportunity Comm'n*, 560 A.2d 517, 521 (D.C. 1989).

Statute is irrelevant to the FOIA analysis." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 499 (1994). The D.C. Circuit has made clear that a FOIA requester's "need or intended use for the documents is irrelevant." *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989).

The parties have spent much of trial eliciting testimony and offering exhibits about the existence and scope of Ms. Dorsey's supposed duty at DHCD. But that duty must itself be legal. That duty must be legal whether it is an oral policy or a written one. Imagine a situation where a supervisor tells a subordinate not to hire a job candidate because she is pregnant. If the job candidate gave the subordinate a check for $10,000 to ignore her supervisor's instruction, this could not form the basis of a bribery charge. It would not satisfy 18 U.S.C. § 201(a)(1)(C) because the supervisor's instruction violates the law and cannot form the basis of a "lawful" duty.

Even viewing the evidence in the light most favorable to the government, Ms. Pair's policy that "whether or not somebody had to use the FOIA process depended on who was asking for the document" (Ex. A at 107) violates settled precedent precluding agencies from discriminating against requestors in this fashion. For these reasons, Mr. Bailey requests that the Court grant his Rule 29 motion as to Counts 1 and 2.

October 4, 2022                                          Respectfully submitted

/s/ Sara E. Kropf                                        /s/ Pleasant Brodnax
Sara E. Kropf (D.C. Bar 481501)                          Pleasant S. Brodnax, III
KROPF MOSELEY PLLC                                       1701 Pennsylvania Avenue, NW
1100 H Street NW                                         Suite 200
Suite 1220                                               Washington, D.C., 20006
Washington, DC 20005                                     (202) 462-1100
(202) 627-6900                                           pleasant.brodnax@gmail.com
sara@kmlawfirm.com

*Counsel for Defendant Brian Bailey*

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 4, 2022, I caused a copy of the foregoing Defendant Brian Bailey's Motion for Judgment of Acquittal to be served on all counsel of record via the Court's CM/ECF system.

                                      /s/ Sara E. Kropf
                                      Sara E. Kropf