UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DAVID PAITSEL,

Defendant.

Criminal Action No. 19-156-2 (CKK)

**MEMORANDUM OPINION**
(February 21, 2023)

A jury convicted Defendant David Paitsel ("Defendant" or "Paitsel") of conspiracy in violation of 18 U.S.C. § 371 and accepting bribes in violation of 18 U.S.C. § 201(b)(2)(C). In his pending [239] Motion for Judgment of Acquittal, Defendant mainly challenges the sufficiency of the evidence as to both counts. He also mounts a purely legal challenge to his section 201(b)(2)(C) conviction, arguing that the charged conduct, taken as true, is not an "act in violation of [his] official dut[ies]" within the meaning of the bribery statute. Both arguments fail. Accordingly, and upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, Defendant's [254] Motion for Judgment of Acquittal is **DENIED**.

### I.   BACKGROUND

A jury convicted Defendant of two counts arising from a conspiracy between Paitsel and co-defendant Brian Bailey whereby Bailey paid Paitsel for tenant contact information only

---

[1] The Court's consideration has focused on:
- Defendant's Motion for Judgment of Acquittal on Counts 3 and 5 of the Indictment, ECF No. 239 ("Motion" or "Mot.");
- The Government's Opposition to Defendant Paitsel's Motion for Judgment of Aquittal on Counts 3 and 5 of the Indictment, ECF No. 259 ("Opp."); and
- Trial Transcripts, ECF Nos. 249-253 ("Trial Trans.").

Defendant did not file a reply.
In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

1

available to Paitsel by virtue of his position as a Federal Bureau of Investigation ("FBI") employee. As explained further in the accompanying Memorandum Opinion addressing Bailey's Rule 29 motion, this conspiracy served Bailey's efforts to use unlawfully obtained, confidential information on tenants to secure their rights to purchase their respective buildings when put up for sale by their respective landlords. Bailey explained the pecuniary benefits of his illicit efforts to potential partners in one particularly incriminating email in evidence. Gov. Ex. 103C. The District of Columbia, in Bailey's words, "is unique to any other jurisdiction in the country in that every tenant [who is] renting a residence has [a] 'right of [first] refusal' to purchase the property they live in" when their landlord puts the property up for sale. Id. This process is governed by the District of Columbia's "Tenant Opportunity to Purchase Act" ("TOPA"), codified at D.C. Code § 42-3404. If a tenant can match the landlord's "bona fide offer of sale," the landlord must sell the building to the tenant. Id. 42-404.02(a). By acquiring these rights, and acquiring them as early as possible, Bailey earned the opportunity "to purchase the [property], match or re-negotiate the contract[,] and then sell [Bailey's newfound rights] to purchase the property to another investor without actually taking title to the property." Gov. Ex. 103C. "The difference between the contract price and the premium amount that an investor is willing to pay is the margin of profit that's left over." Id.

      Bailey could only purchase these rights, however, if (1) he knew a property was for sale and (2) he could contact the tenants to buy their TOPA rights. As a result, he began to pay District of Columbia government employee Dawne Dorsey, usually in cash, for unredacted TOPA "notices," also termed "offers of sale." Pursuant to TOPA, a landlord must first "provide each tenant a written copy of the offer of sale" and, after doing so, "provide the [District of Columbia Department of Housing and Community Development ("DHCD")] with a written copy

of the offer of sale" along with a certification that "each tenant [was] provided [a] cop[y] of the offer of sale on the same day." D.C. Code § 42-3404.03. As a DHCD employee, Dorsey had immediate access to these notices as soon as they were provided to DHCD. *See* Trial Trans. 9/28/22 at 136-37. Ill-gotten names in hand, Bailey turned to Paitsel to secure their contact information, obtained through a particularly powerful commercial search engine, CLEAR, tailored to FBI purposes.

The company that owns and operates CLEAR, Thomson-Reuters, offers various versions of CLEAR to certain kinds of customers. Trial Trans. 9/29/22 at 131-37. Commercial customers generally receive a less powerful version with fewer sources of data than Government customers. *See id.* at 132, 143. The FBI effectively has the most powerful version, with access to sources of information generally unavailable to commercial customers. *Id.* Consistent with the tool's potency, federal law provides that FBI agents must first identify certain permissible uses of CLEAR before conducting a search. *See id.* at 136-37; *see also* Gov. Exs. 6A, 6D (delineating permissible uses). Favors for friends and searches for personal business interests are not permissible uses. *Id.* at 94-95.

Because Bailey knew that Paitsel had access to information that Bailey did not by virtue of Paitsel's position as an FBI agent, he turned to Paitsel to search for tenant information when Bailey could not himself find that information through other means. *See* Trial Trans. 9/30/22 at 39-40; Gov. Ex. 113. Paitsel's use of CLEAR for Bailey proved lucrative, and Bailey compensated Paitsel for his efforts. *E.g.*, Gov. Ex. 106E ("Hey Bro… I owe you [$]5K!!! I found [a tenant who] assigned his [TOPA] rights over to me."); Gov. Ex. 106G ("Looks like we will get our money for 3021 15th Street NW . . . I owe you [$]5k on that."). Ultimately, Paitsel

used CLEAR to provide information for Bailey over thirty times, each time lying about his true purpose for using CLEAR.  *See* Gov. Ex. 104C.

Consistent with the facts in evidence, the jury returned a verdict of guilty as to Count Three, charging Paitsel with conspiring with Bailey to receive bribes in exchange for information obtained through the FBI's version of CLEAR, and Count Five, charging Paitsel with accepting bribes from Bailey to perform CLEAR searches on Bailey's behalf and in violation of Paitsel's "official duty" to use CLEAR only for official purposes.

## II.  LEGAL STANDARD

Rule 29(a) of the Federal Rules of Criminal Procedure provides in pertinent part that "[a]fter the government closes its evidence or after the close of all the evidence, the court on defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." "In ruling on a motion for a judgment of acquittal, the trial court must view the evidence in the light most favorable to the Government[,] giving full play to the right of the jury to determine credibility, weigh the evidence[,] and draw justifiable inferences of fact." *United States v. Treadwell*, 760 F.2d 337, 333 (D.C. Cir. 1985) (citation omitted). "This stringent standard contemplates that the ultimate decision of guilty or innocence should be left to the jury, and that it is the province of the jury to credit certain testimony and reject other testimony." *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009). "[A] judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilty beyond a reasonable doubt." *United States v. Weisz*, 718 F.2d 413, 438 (D.C. Cir. 1983) (emphasis original).  Argument that the evidence is legally insufficient to warrant conviction is appropriately raised on a Rule 29 motion for a judgment of acquittal. *See United States v. Reffitt*, 602 F. Supp. 3d 85, 95 (D.D.C. 2022).

### III. DISCUSSION

**A. Section 201(b)(2)(C)**

As the Court explained further in its Memorandum Opinion as to Bailey's Rule 29 motion, federal criminal law's most expansive bribery statute is 18 U.S.C. § 201. *See McDonnell v. United States*, 579 U.S. 550, 561 (2016). It criminalizes several forms of bribery, including, among others, a *quid pro quo* to defraud the United States, § 201(b)(1)(B), and a *quid pro quo* to influence a witness's "testimony under oath" at a "trial, hearing, or other proceeding," § 201(b)(4). Most commonly charged is section 201(b)(1)(A), which criminalizes corruptly giving anything of value to a public official with the intent to influence any official act, *see United States v. Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002), which the Court in prior orders has termed "official-act bribery." Unlike official-act bribery, lawful-duty bribery bars inducing a public official "to do or omit to do any act in violation of the lawful duty of such official." 18 U.S.C. § 201(b)(1)(C). Section 201(b)(2)(C) is essentially the converse, criminalizing a "public official" from "directly or indirectly, corruptly demand[ing], seek[ing], receiv[ing], or accept[ing]" any thing of value in return for "being induced to do or omit any act in violation of the official duty of such official or person."[2] Defendant reads this subsection to be inapplicable to the facts in evidence. It is not.

Defendant relies mainly on *Valdes v. United States*, 475 F.3d 1319 (D.C. Cir. 2007) (en banc), a case to which the Court has devoted much discussion in this matter. In that case, a jury

---

[2] At Defendant Bailey's insistence, the Court spent a substantial amount of time over the course of this case considering the precise scope of section 201(b)(1)(C) and crafting an exact definition of "lawful duty." Although section 201(b)(2)(C) uses a slightly different word, "official," Defendant Paitsel does not press the point, so the Court need not address whether there is any legally significant difference between the term "official duty" and "lawful duty" for the purposes of the charged subsection.

5

convicted a police officer of section 201(c)(1)(B) bribery based on the police officer "look[ing] up some license plate numbers" in exchange for cash payments. *Id.* at 1321. In relevant part, section 201(c)(1)(B) criminalized a public official from accepting payments in reference to "any official act performed or to be performed by such official." *Id.* at 1322 (quoting 18 U.S.C. § 201(c)(1)(B)). The court held, en banc, that providing information available to law enforcement by virtue of the officer's position in exchange for cash is not accepting payments to influence "any official act." *Id.* at 1322-1323. This is so, the *Valdes* court reasoned, because merely searching for and providing information is not a "question" or "matter" before a public official, which is how the statute defines "official act." *Id.* at 1323. Relevant to this case, *Valdes* explained that "a Department of Justice lawyer who used a government Westlaw account to look up a legal question for a friend [does not] 'deci[de]' a [question] that might 'be brought before [him],'" i.e., does not engage in an official act. *Id.* at 1326 (brackets altered). Because, Defendant argues, he did not engage in an "official act" within the meaning of *Valdes* and section 201(c)(1)(B), he did not violate an "official duty" within the meaning of section 201*(b)(2)(C)*.

Yet this argument impermissibly conflates two distinct statutory subsections. As *Valdes* went on to note, the various subsections of 18 U.S.C. § 201 each encompass distinct, "*additional predicate classes*" of conduct.[3] *Id.* at 1327. As the Eleventh Circuit has recently explained, treating each subpart of section 201 as substantially identical "is wrong," because, "[w]here Congress includes particular language in one section of a statute but omits it in another section of

---

[3] *Accord Alfisi*, 308 F.3d at 152 n.3; *United States v. Young*, 651 F. App'x 202, 204 (4th Cir. 2016); *United States v. Fernandez*, No. 19-15044, 2022 WL 3581793, at *4 (11th Cir. Aug. 22, 2022) (unpublished). *Cf. also United States v. Leyva*, 282 F.3d 623, 625 (9th Cir. 2002) (distinguishing section 201(b)(2)(B), which criminalizes a *quid pro quo* for fraud, with sections 201(b)(1)(A) and (b)(1)(C), which have "'official act' or 'official duty' language").

6

the same Act, it is generally presumed that Congress acts intentionally and purposely." *Fernandez*, 2022 WL 3581793, at *4 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Therefore, like section 201(b)(1)(C), section 201(b)(2)(C) does not bar bribery to impact an "official act," but rather to secure an action that, if taken, violates an "official duty." *See Alfisi*, 308 F.3d at 152 n.3. As *Alfisi* explains in dicta, although there is "overlap in some considerable measure" between these two factual predicates, "official-act" bribery "seems most appropriate in cases of bribes regarding decisions involving the exercise of judgment or discretion," whereas "official-duty" bribery "would be most appropriate in the cases of bribes to induce actions that directly violate a specific duty, such as a prison guard's duty to prevent the smuggling of contraband." *See id.* (comparing section 201(b)(1)(A) and 201(b)(1)(C)). This case charges the latter category, and any reliance of *Valdes*' discussion of the former is misplaced.

### B. Sufficiency of the Evidence

1. Conspiracy

Defendant first argues that the Government did not present sufficient evidence that Paitsel knowingly agreed "to violate the law by providing Brian Bailey with nonpublic information." Mot. at 3. This challenge misunderstands the law of conspiracy and the facts in evidence.

The Government charged Paitsel with conspiring with Bailey to accept money from Bailey in exchange for actions that violate an official duty applicable to Paitsel's position as an FBI agent. Indictment, ECF No. 38 at 14. To prove a conspiracy charge, the Government "must show that the defendant agreed to engage in criminal activity and knowingly participated in the conspiracy with the intent to commit the offense, as well as that at least one overt act took place in furtherance of the conspiracy." *United States v. Hemphill*, 514 F.3d 1350, 1362 (D.C. Cir.

2008) (internal quotation marks omitted).  An agreement to join a conspiracy need not be explicit and may be inferred from the facts and circumstances of the case. *See United States v. Smith*, 950 F.3d 893, 895 (D.C. Cir. 2020).  Moreover, the Government need not show that the conspirators "'agree[d] to commit or facilitate each and every part of the substantive offense.'" *United States v. Thompson*, 275 F. Supp. 3d 107, 111 (D.D.C. 2017) (quoting *Salinas v. United States*, 552 U.S. 52, 63 (1997)).  Rather, the Government need only establish that the defendant "'reached an agreement with the specific intent that the *underlying crime* be committed by some member of the conspiracy.'" *Id.* (emphasis added) (quoting *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)).

As a result, to secure conviction, it was not actually necessary for the jury to find that the information secured through CLEAR was, as the Indictment charged, "nonpublic."  Similarly, the jury need not have found that Bailey directed Paitsel to use CLEAR specifically.  Rather, the jury need only have found that Paitsel agreed to provide information through CLEAR in exchange for cash where using CLEAR for this purpose was a violation of Paitsel's official duty. That said, there was ample evidence to establish that Paitsel understood he was conveying "nonpublic" information, i.e., information that was not generally otherwise available to the public through the means Paitsel used.  *See, e.g.*, Trial Trans. 9/22/22 at 131-38; Gov. Exs. 6A, 6D.  Therefore, the evidence was sufficient to support Defendant's conspiracy conviction.

    2. Bribery

As to his bribery conviction, Defendant argues only that there was insufficient evidence to establish that he acted "corruptly."  Not so.

Each of section 201's subprovisions requires corrupt intent.  *See United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404 (1999).  In *McDonnell v. United States*, the

8

Supreme Court explained that "corruptly" means "*quid pro quo* corruption," i.e., a specific intent to "exchange a thing of value for" an action in violation of a lawful duty. *See* 136 S. Ct. 2355, 2372 (2016) (construing official-act bribery). In this context, "corruptly" *does not* mean, as Defendant argues, acting with "a bad or evil purpose." *See* Mot. at 9. There was substantial evidence establishing the Paitsel understood that he was improperly accessing CLEAR in violation of a duty to use it only for FBI purposes in exchange for money payments. The evidence established that Paitsel was required to select an official reason for using CLEAR when he accessed the system, *see, e.g.*, Trial Trans. 9/22/22 at 131-38; Gov. Exs. 6A, 6D, and he lied each time he did so, Gov. Ex. 104C. Moreover, in addition to Bailey's emails to Paitsel promising to pay Paitsel, *e.g.*, Gov. Ex. 106E, the Government placed the payments themselves into evidence, Gov. Exs. 1N, 1O. The evidence is therefore more than sufficient to establish corrupt intent to accept payments in exchange for actions in violation of an official duty. As such, this last challenge fails.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's [254] Motion for Judgment of Acquittal. An appropriate order accompanies this Memorandum Opinion.

**Dated:** February 21, 2023

                                                  /s/
                                            COLLEEN KOLLAR-KOTELLY
                                            United States District Judge