UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES )<br>)<br>)<br>v.                                       )          Crim. No. 1:19-cr-156-CKK-2<br>)<br>DAVID PAITSEL,                   )<br>       Defendant.               ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

David Paitsel ("Mr. Paitsel") by and through undersigned counsel, respectfully files this Memorandum in Aid of Sentencing. Mr. Paitsel humbly appears before this Honorable Court for sentencing. On October 7, 2022, after a trial by a jury, Mr. Paitsel was found guilty of one count, respectively, of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 and Bribery in violation of 18 U.S.C. § 201(b)(1)(C).

Mr. Paitsel is a 42-year-old devoted husband and father. *See* Final Presentencing Investigation Report ("PSR") at ¶ 87.  He has dedicated his entire lifelong career to serving the United States in more than one capacity and continues to do so to this day in the United States Army. *Id* at ¶ ¶ 107-114; *see also* Exhibit A, Letter from David Paitsel.  He is a strong man of faith and is devoted to serving others at his parish. *See* Ex. A. Mr. Paitsel luckily has a strong support system in place, and his family have been by his side throughout the pendency of this matter. *See* PSR  at ¶ 88-89.

Based upon Mr. Paitsel's personal history and character, the nature and circumstances of the offense, and his lack of criminal history, counsel  requests that this Court impose a sentence

1

of probation. Such a sentence would be "sufficient, but not greater than necessary" to achieve the legitimate purposes of sentencing. *See* 18 U.S.C. § 3553(a).[1]

## I. THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 39 (2007), it may not treat that range as mandatory or presumptive, *Id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors . . . make an individualized assessment based on the facts presented," *Gall* at 49-50, and explain how the facts relate to the purpose of sentencing. *Id.* at 53-60; *see also Pepper v. United States*, 131 S. Ct. 1229 (2011). The Court's "overarching" duty is to "' impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.* at 1242-43.

To ensure that the guidelines are truly advisory and constitutional, this Court has the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory…, as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (holding that district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the

---

[1] *See infra*, Applicable U.S. Sentencing Guideline Range "U.S.S.G.") counsel's analysis of the United States Sentencing Guidelines applicability in this matter).

punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper*, 131 S. Ct. 1229, 1240 (2011) (citing *Wasman v. United States*, 468 U.S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Forman*, 436 F.3d 638, 644, n.1 (6th. Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2nd Cir. 2006).

## II.   APPLICABLE U.S. SENTENCING GUIDELINE RANGE

Counsel submits the following United States Sentencing Guidelines analysis applies in this case:[2]

**2021 Guideline**

U.S.S.G. § 2C1.1 – Base Offense Level ................................................................................... 14

---

[2] Counsel submitted its objections to the PSR calculation of the offense conduct in an earlier filing. *See* ECF 276.

The PSR writer calculates the advisory guideline range to be the following:

    U.S.S.G § 2C1.1(a)(1) - Bribery Base Offense Level…………………………………….14

Specific Offense Characteristics:
    U.S.S.G. § 2C1.1(b)(1) - More than one bribe……………………………………………+2

    U.S.S.G. § 2C1.1(b)(3) - Offense involved a public official in a sensitive position……...+4

    U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(G) - Benefit resulting from the offense
                                                   greater than $250,000………………………+12

    Adjusted Offense Level ……………………………………………………………………32

*See* PSR, ECF 279.

U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(G) Specific Offense Characteristics: Public Official

In a High-Level Decision-Making or Sensitive Position ............................................................ +4

**2023 Guidelines[3]**

U.S.S.G. § 4C1.1: Zero Point Offender Adjustment ................................................................... -2

**Total Offense Level ...........................................................................................................16**

Mr. Paitsel has a criminal history score of zero and a criminal history category of I for sentencing purposes. *See* PSR at ¶ 77. With a total offense level of sixteen (16), counsel submits that the result in an advisory Guidelines range for Mr. Paitsel should be 21 months to 27 months. *Id*. at ¶ 95.

**III.    18 U.S.C. 3553(a) FACTORS**

As the Court is well aware, the Sentencing Guidelines are not mandatory, and while the Court must consult the Guidelines and take them into account at sentencing, *see United States v. Booker*, 125 S. Ct. 738, 767 (2005), Section 3553(a)(1) provides a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 552 U.S. at 50 n. 6. The command is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime." *Pepper*, 131 S. Ct. at 1240 (*citing Williams v. New York*, 337 U.S. 241, 247 (1949)). It is similarly consistent with Congress' express directive that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct." *Id*. (*citing* 18 U.S.C. § 3661).

---

[3] Counsel submits that the two-point reduction for the zero point offender should apply given the Amendment to the U.S.S.G. is set to go into effect on November 1, 2023.

4

**A. Nature and Circumstances of the Offense**

The nature of the conduct for which Mr. Paitsel has been convicted[4] is serious. However, the conduct was not so egregious in nature to warrant a sentence of 121 months, which is what the government is asking this Court to impose in this matter. *See* ECF 282. The evidence presented at trial is that Mr. Paitsel received one (1) check for $6,500.00 from co-defendant, Brian Bailey ("Mr. Bailey").[5] *See* PSR at ¶ 38. This is not a case in which Mr. Paitsel is alleged to have received hundreds of thousands of dollars, luxurious gifts or trips, or other things of value.

Furthermore, the Court heard testimony for nearly two (2) weeks, and at no point throughout the trial did the jury hear any evidence of Mr. Paitsel's involvement with Dawne Dorsey, an employee at the Department of Housing and Community Development ("DHCD"), who pleaded guilty to a bribery count involving Mr. Bailey. Mr. Paitsel was not alleged to have been involved in an elaborate scheme with multiple individuals. In addition, no evidence was presented that Mr. Paitsel's daily duties as an FBI Special Agent were compromised in any way. The jury heard testimony from Temitaya Aderoba, one of Mr. Paitsel's supervisors at the FBI. Mr. Aderoba testified that Mr. Paitsel completed all his work satisfactorily without any concerns from his superiors. *Id*.

In light of Mr. Paitsel's conduct and the single check for $6,500.00 made out to him, the Court should vary downward in fashioning its sentence. As the PSR writer notes, the "loss table at USSG 2B1.1(b)(1) may over-represent the seriousness of the offense" and therefore, "the

---

[4] Mr. Paitsel maintains his innocence regarding the conduct for which he has been convicted.

[5] Mr. Paitsel maintains his objection that there was only one payment to Mr. Paitsel from Mr. Brian Bailey for noncriminal purposes. Mr. Paitsel maintains his objection that there were cash payments to him from Mr. Bailey.

Probation office has identified [this would] warrant a variance from the applicable guideline range." *See* PSR at ¶ 155.[6]  The PSR writer then went on to submit to the Court her own sentencing recommendation and submitted that:

> [T]he consequences the defendant has faced as a result of his involvement in the instant offense, including his termination from federal employment and incurring felony convictions, far outweigh the meager financial benefit he received from his participation in the scheme. Regarding just punishment, the recommended period of incarceration combined with the term of supervision is sufficiently punitive to address the goals of sentencing and represents a significant variance from the advisory sentencing guidelines range based on the factors noted above.

*See* ECF 280 at 2.

Counsel agrees that the Government's requested sentence of 121 months gravely over-represents the seriousness of the offense and therefore a downward variance is justified. The PSR writer's recommendation of concurrent 24-month sentences underscores the unreasonableness of the Government's request. *See* ECF 280 at 1.

### B. Personal History and Characteristics

Mr. Paitsel's heartfelt letter to the court underscores the immense personal and emotional toll that legal proceedings can take on individuals. *See* Ex. A. After serving this country for his entire professional career, losing one's life savings, home, and career is undoubtedly a devastating experience. *Id*. It's clear that Mr. Paitsel has faced considerable hardships throughout this process. *Id*. Despite these challenges, Mr. Paitsel remains resilient and determined. *Id*. His unwavering faith and belief in his ability to make a positive impact on the

---

[6] *See also* PSR ¶ 156 noting:

> During the last five fiscal years (FY2018-2022), there were 11 defendants whose primary guideline was §2C1.1, with a Final Offense Level of 32 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 11 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 80 month(s) and the median length of imprisonment imposed was 72 month(s). For all 11 defendants in the cell, the average sentence imposed was 80 month(s) and the median sentence imposed was 72 month(s).

world keeps him moving forward. *Id*. His goal of returning to school to study law and to eventually represent indigent defendants is a testament to his desire to bring about positive change within the criminal justice system. *Id*.

Mr. Paitsel has served the United States military since he enlisted in 1998, when he was only seventeen (17) years old. He continues to serve this nation with great pride. *See* Ex. A. Mr. Paitsel received promotions and numerous medals and awards. *Id*. He put his life on the line serving this nation on two (2) deployments to Iraq and Afghanistan. *Id*. This Court should take into consideration Mr. Paitsel's long-term commitment to serving the United States. As well, the PSR writer "has identified [Mr. Paitsel's decades of military service] warrant a variance from the applicable guideline range." *See* PSR at ¶ 155.

The Reverend Stacey E. Harris ("Rev. Harris") writes to the Court in support of Mr. Paitsel. *See* Exhibit B, Letter from Rev. Stacey E Harris. As someone who has known Mr. Paitsel for over ten (10) years, Rev. Harris describes Mr. Paitsel as someone "trustworthy, kind, and involved with his family and community positively and joyfully." *Id*. He explains how Mr. Paitsel is an active member of their parish participating in different capacities including student ministry and couples small group sessions. *Id*. To Rev. Harris he has "personally seen the sorrow, regret, and anxiety the proceedings have caused in [Mr. Paitsel's] life," and despite facing the most challenging time in his life, Mr. Paitsel "has been a constant source of encouragement and strength." *Id*.

Peter Wang ("Mr. Wang") submits a letter to the Court on behalf of Mr. Paitsel. *See* Exhibit C, Letter from Peter Wang. Mr. Wang supervised Mr. Paitsel at the FBI from 2011 to March 2014 and describes Mr. Paitsel as someone who "worked tirelessly to address emerging threats emanating from a top threat country." *Id*. He further describes their professional relationship as

one in which Mr. Wang "explicitly trusted David Paitsel to do his best in carrying out the duties entrusted to him by the U.S. Government as an FBI Special Agent." *Id*.

Donnie Parks ("Mr. Parks") also writes in support of Mr. Paitsel. *See* Exhibit D, Letter from Donnie Parks. As a neighbor and friend of Mr. Paitsel for the past four (4) years, Mr. Parks has come to know Mr. Paitsel as someone "who is a loving and caring husband and father" and someone "who is honest, friendly, and extremely caring for others." *Id*. Mr. Parks notes that as someone who has served forty-five years in law enforcement, he knows Mr. Paitsel will make real positive changes in his future to never be in this position again. *Id*.

Christopher Witte ("Mr. Witte"), a friend of Mr. Paitsel, writes to the Court as well in support of him. *See* Exhibit E, Letter from Christopher Witte. He describes Mr. Paitsel as "thoughtful and caring." *Id*. Throughout this journey, Mr. Witte has seen the toll this case has taken on his friend and asks this Court for "a balance between justice and mercy."

A former coworker of Mr. Paitsel, Jesse Falk ("Mr. Falk"), also writes in support. *See* Exhibit F, Letter from Jesse Falk. Mr. Falk met Mr. Paitsel in May 2010 in the Baltimore Field Office and describes Mr. Paitsel as someone who is "trustworthy, dependable, hard-working, and dedicated. *Id*. Mr. Falk remarks on Mr. Paitsel's extensive military career and how Mr. Paitsel continues to serve this country to this day. *Id*. Despite his arrest and conviction, Mr. Falk characterizes Mr. Paitsel as "a respectable and admirable individual." *Id*.

**C. Mr. Paitsel Poses No Risk of Recidivism**

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is one of great practical concern and is the most capable of being measured. Because of the reinvigorated role of the judiciary in sentencing, judges can now impose sentences that consider such research to more effectively impose sufficiently, but not greater than

necessary, sentences.  The PSR writer agrees that Mr. Paitsel is not the type likely to recidivate. *See* ECF 280.  In her recommendation to the Court, the PSR writer states that "[i]t does not appear likely the defendant [Mr. Paitsel] will be in a position to re-offend in a similar manner, and given his personal history and characteristics, recidivism is unlikely." *Id*.

The judiciary's bolstered role is especially important given the Commission's findings that "there is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high guideline offense level; recidivism rates are similar. While surprising at first glance, this finding should be expected as the Guidelines' offense level has long been recognized as not intended or designed to predict recidivism." *U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) (hereinafter "*Measuring Recidivism*").  Thus, the guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C). Accordingly, *United States v. Booker* has freed the judiciary to remedy this inconsistency. 543 U.S. 220 (2005).

Additionally, the Commission has also objectively quantified the low likelihood of recidivism.  For example, the Sentencing Commission's study confirms that recidivism rates decline relatively consistently as age increases. *See Measuring Recidivism* at 12.  More specifically with respect to Mr. Paitsel, who is 42 years old and has a criminal history category of I, offenders over the age of 40 have a recidivism rate of only 6.9 %. *Id.* at 28. It is unfortunate that the Guidelines' offense levels do not take into consideration such data.  This data exists yet is not utilized to inform the Commission's rulemaking.  Simply put, there is nothing in the record to indicate that Mr. Paitsel would commit any criminal offense in the future, especially given his age, his personal history and characteristics, and the nature and circumstances surrounding the offense.

**D. Mr. Paitsel's Public Demise Serves as Adequate Deterrence to Others.**

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." Arguably, the government has already substantially achieved the maximal deterrent effect of Mr. Paitsel's offense by charging, trying, and convicting him. As a result, Mr. Paitsel's name and the substance of his offense will be discussed in numerous conversations and settings among family and friends and within certain professional environments for years to come, a shameful reality from which he simply cannot escape. In short, Mr. Paitsel's public demise sends a strong message to the public and others currently serving in the Federal Bureau of Investigations.

## CONCLUSION

For the aforementioned reasons, David Paitsel respectfully requests that the Court impose a sentence of probation. A sentence of this nature would be adequate and justified in fulfilling the legitimate objectives of sentencing without exceeding what is truly necessary.

Respectfully submitted,

_____s/_____
David Benowitz
DC Bar # 451557
Price Benowitz LLP
409 Seventh Street, NW, Suite 200
Washington, DC  20004
(202) 271-5249
david@pricebenowitz.com

*Counsel for David Paitsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September 2023, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via CM/ECF to all parties in this matter.

_____s/_____
David Benowitz