In the United States District Court
for the District of Columbia

---

UNITED STATES OF AMERICA,
    *Plaintiff*,

v.                                     No. 1:19-cr-00156-CKK

DAVID PAITSEL *et al.*,
    *Defendant*

---

### DAVID PAITSEL'S MOTION FOR RELEASE PENDING APPEAL

In accordance with 18 U.S.C. § 3143(b), defendant David Paitsel moves on the following grounds for this Court to permit him to remain released pending the resolution of his appeal.

### Course of Proceedings

On October 7, 2022, a jury found Mr. Paitsel guilty of one count of conspiracy to commit bribery, in violation of 18 U.S.C. § 371, and one count of bribery, in violation of 18 U.S.C. § 201(b)(1)(C). Doc. 244. Although Mr. Paitsel would have had an advisory sentencing-guidelines range of 121 to 151 months imprisonment if not for the five-year statutory maximum, this Court varied downward significantly and sentenced him to serve 24 months' imprisonment, to be followed by 24 months of supervised release. *See* Doc. 300. This Court ordered him to report to the Bureau of Prisons on January 16, 2024. *Id.*

On November 2, 2023, Mr. Paitsel filed a notice of appeal. Doc. 304. For the following reasons, he now requests this Court to permit him to remain released pending the resolution of that appeal.

### Standard for Release Pending Appeal

The Bail Reform Act of 1984 governs the availability of bail pending appeal. *See* 18

U.S.C. §§ 3143, 3145. That Act requires that a person who has been convicted of a crime and sentenced to imprisonment be detained pending appeal unless he establishes:

    (1)    by clear and convincing evidence, that he is unlikely to flee if released;

    (2)    by clear and convincing evidence, that he is unlikely to pose a danger to the safety of any other person or to the community if released;

    (3)    that his appeal is not for the purpose of delay;

    (4)    that his appeal raises a substantial question of law or fact; and

    (5)    that resolution of that question favorably to the appellant is likely to result in

            (i)    reversal of all counts of conviction on which imprisonment has been imposed,

            (ii)    an order for new trial of all counts on which imprisonment has been imposed,

            (iii)    a sentence that does not include a term of imprisonment, or

            (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b); *see United States v. Giancola*, 754 F.2d 898, 900–01 (11th Cir. 1985). Here, those factors all weigh in favor of allowing Mr. Paitsel to remain on bond for the duration of the appeal process.

## Argument

**1.    Risk of Flight**

Clear and convincing evidence establishes that Mr. Paitsel is not a flight risk. With the exception of the conduct that was the subject of this case, he has spent his entire adult life upholding and fighting for the rule of law. While a junior in high school, he joined the

2

Army National Guard, and, five years later, began active duty with the United States Army. PSR ¶ 109. He was honorably discharged in 2009 yet continued serving in the United States Army Reserve. *Id.*

During his military service, he served as a protections officer to the top seven officers and civilians at the Pentagon, including Secretary of Defense Donald Rumsfeld and Secretary of Defense Robert Gates. PSR ¶ 110. Between 2007 and 2010, he was deployed to Iraq, Afghanistan, and Kuwait at various times. PSR ¶ 110. He earned many honors and awards during his tour of duty. PSR ¶ 111. After leaving the military in 2009, he was employed as a Special Agent with the FBI, working in several offices in a variety of roles, including as the Director of Intelligence at the FBI Headquarters from 2016 to 2017. PSR ¶ 112.

Mr. Paitsel has absolutely no criminal history, and he has scrupulously complied with all conditions of his pre- and post-trial release. His wife and teenage son, who love and support him, reside in North Carolina. PSR ¶ 91. His parents and brother reside in Tennessee, and his sister lives in Virginia. PSR ¶¶ 83. He maintains good relationships with all.

This record shows by clear and convincing evidence that there is absolutely no risk that Mr. Paitsel would flee while his appeal is pending. Indeed, this Court cited his distinguished military service as a basis to vary downward from his advisory sentencing range. Although, as we explain below, his appeal will raise substantial questions of law that are likely to result in the reversal of both counts of conviction, he has utmost respect for the Court and the legal system and is committed to complying with the final judgment in this case after his appeals have been exhausted, whatever that judgment may be.

**2.   Danger to the Community**

Much of the same clear and convincing evidence demonstrating that Mr. Paitsel is not a flight risk also shows that Mr. Paitsel presents no danger to the community. To the contrary, the evidence discussed above shows that he has spent his career protecting the community from others who do harm.

He understands, however, that the jury found that his conduct at issue in this case violated the federal bribery statute. Regardless of whether his convictions are upheld on appeal, there is no danger that he would ever again engage in any conduct that even approaches illegality. He intends to continue to uphold and support the rule of law.

**3.   Not for Delay**

As we discuss below, Mr. Paitsel has good faith grounds to challenge his convictions on appeal. This appeal, therefore, is not for the purpose of delay.

**4.   Substantial Question**

A "substantial question of law or fact" is "a 'close' question or one that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1988) (quoting cases). Here, Mr. Paitsel will raise several "close questions" that the United States Court of Appeals for the D.C. Circuit very well could decide in his favor.

   **a. The jury instructions directed a guilty verdict on an element of the offense and consequently resulted in structural error.**

The federal bribery statute criminalizes a public official's corrupt acceptance of something of value in return for being induced to do "any act in violation of the *official duty*" of that person. *See* 18 U.S.C. § 201(b)(2)(C) (emphasis added). "It is the corruption of official decisions through the misuse of influence in governmental decision-making which the bribery statute makes criminal." *United States v. Muntain*, 610 F.2d 964, 968 (D.C. Cir.

4

1979). The federal conspiracy statute criminalizes conspiring to commit that offense. *See* 18 U.S.C. § 371.

Because section 201 does not define the term "official duty," what constituted Mr. Paitsel's an "official duty" was a factual one for the jury. *See United States v. Fernandez*, Nos. 19-15044, 19-151652022, 2022 WL 3581793 (11th Cir. 2022) (unpublished) (citing *United States v. Project on Gov't Oversight*, 616 F.3d 544, 562 (D.C. Cir. 2010)); *accord United States v. Luna*, 649 F.3d 91, 99–100 (1st Cir. 2011) (citing cases regarding elements of 18 U.S.C. § 111, which criminalizes assaulting officer engaged in "official duty"). Under the Due Process Clause, Mr. Paitsel could not be convicted of bribery unless the government proved beyond a reasonable doubt both the existence of such an official duty and all other facts constituting that crime. *See United States v. Johnson*, 718 F.2d 1317, 1320 (5th Cir. 1983) (*en banc*) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

The indictment in this case alleged that Mr. Paitsel had a variety of "official duties," including:

1. a duty under 5 C.F.R. § 2635.702 not to use his "position" as an FBI Special Agent for his own private gain;

2. a duty under 5 C.F.R. § 2635.703(b) not to use "nonpublic information" to further his private interests or those of another;

3. a duty under 5 C.F.R. § 2635.704(a) to make "an honest effort to use official time and government property only for official business";

4. a duty under 5 C.F.R. § 2635.101(b)(14) "to endeavor to avoid any actions creating the appearance that [he] was violation the law or … ethical standards"; and

5. a duty not to engage in "outside employment, except under limited circumstances and with prior approval from the FBI."

*See* Doc. 18 at 13. This Court admitted into evidence all of the referenced regulations. *See*

5

Doc. 250 at 87; Gov't Ex. 7A. By the time this Court was preparing the jury instructions, though, the government had winnowed down its theory, contending that Mr. Paitsel had violated a supposed "duty not to use government resources for non-official business." *See* Doc. 110-1 at 8.

No matter how conclusive the evidence may have been on the "official duty" element of charged bribery offense based on this or any other theory, this Court could not direct a guilty verdict on that element, on any other element, or on either charged offense as a whole. *See Rose v. Clark*, 478 U.S. 570, 577–78 (1986) ("a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction") (omission in original); *Connecticut v. Johnson*, 460 U.S. 73, 83 (1983) (plurality opinion) (quoting *United Brotherhood of Carpenters & Joiners v. United States*, 330 U.S. 395, 408 (1947)); *see United States v. DiRico,* 78 F.3d 732, 735 (1st Cir 1996) ("Jury instructions cannot operate to deprive a criminal defendant of his or her constitutional 'right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.'") (quoting *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995)); *United States v. Ragsdale*, 438 F.2d 21, 27 (5th Cir. 1971). And here, this Court's bribery instruction removed from the jury's consideration the essential element of what constituted Mr. Paitsel's "official duty." This Court instructed the jury that, to find Mr. Paitsel guilty of bribery, the jury would have to find:

> First, that Mr. Paitsel directly or indirectly demanded, sought, received, accepted, and/or agreed to receive and accept something of value.
>
> Second, Mr. Paitsel was then a public official by virtue of his being employed as a supervisory special agent for the Federal Bureau of Investigation.

6

>Third, that Mr. Paitsel did so corruptly in return for being induced to violate *his official duty not to use government resources for nonofficial business.*

*See* Doc. 309 at 69 (emphasis added). By instructing the jury that Mr. Paitsel had an "official duty not to use government resources for nonofficial business," "the district court relieved the prosecution of its duty of proving, beyond a reasonable doubt, [Mr. Paitsel's] guilt of every element of the offense charged." *See United States v. Bass*, 784 F.2d 1282, 1284–85 (5th Cir. 1986). "Because the government is never entitled to a directed verdict in a criminal jury trial," *United States v. Burton*, 737 F.2d 439, 441 (5th Cir. 1984), an instruction of this nature violates the Due Process clause and renders Mr. Paitsel's bribery conviction unconstitutional, *see. DiRico,* 78 F.3d at 735; *United States v. Daily*, 921, F.2d 994, 1005 (10th Cir. 1990) ("action by the trial court which amounts to a directed verdict on such an element of the offense is unconstitutional").

Moreover, this error—that is, removing an essential element from the jury's determination—constitutes a structural defect in the trial process that requires reversal of Mr. Paitsel's convictions. *See DiRico*, 78 F.3d at 737–38 (because "'materiality'" was an essential factual element of the crime charged, the trial court's withdrawal of that issue from the jury constituted a 'structural defect' in the trial process," which required reversal of defendant's conviction). Reversal is required because, "where a jury has not rendered a verdict that addresses every essential element of the charged offense, and therefore has not rendered a verdict on the crime charged, the question of whether the same verdict would have been rendered absent the constitutional error is meaningless." *Id.*; *accord Sullivan v. Louisiana*, 508 U.S. 275, 280–81(1993) (holding that instruction telling jury to presume certain facts was structural error); *Rose,* 478 U.S. at 577–78 ("harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal

7

trial by jury"); *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988) (citing *Rose* and explaining that "not only does the harmless-error doctrine not apply when the error consists in directing a verdict against a criminal defendant, it also does not apply when the judge directs a partial verdict against the defendant by telling the jury that one element of the crime … has been proved beyond a reasonable doubt, so the jury needn't worry its collective head over that one") (internal citations omitted)); *United States v.* Rockwell, 781 F.2d 985, 990 (3d Cir. 1986) ("The law will not countenance a usurpation by the court of the function of the jury to decide the facts[.]")

This structural error infected Mr. Paitsel's conspiracy conviction too. Although this Court appropriately instructed the jury that the first element the government was required to prove on the conspiracy charge was that "an agreement existed between two or more people to commit the crime of bribery," the jury could not have rendered a verdict on all of the elements of that crime without referring to the Court's bribery instruction. Given the error in the bribery instruction, the conspiracy instruction, considered as a whole, likewise resulted in structural error.

Therefore, Mr. Paitsel has a reasonable likelihood of success on the merits of his challenge to both of his convictions.

    b. **The government failed to present sufficient evidence from which the jury could find that Mr. Paitsel had violated an "official duty."**

Even if the error in the jury instructions was not structural, Mr. Paitsel would still be entitled to relief because the government failed to present sufficient evidence from which the jury could find that he had violated any "official duty." Although a government witness testified that 5 C.F.R. § 2635.704 provides that a government employee may not use government property for "other than an authorized purpose," Doc. 250 at 104, this vague

8

standard of conduct was not a sufficient basis for the jury to find that Mr. Paitsel had an "official duty" not to use his access to CLEAR outside of work hours to obtain the information that Mr. Bailey sought. Mr. Paitsel, therefore, has a substantial likelihood of success on the merits of a challenge to his convictions.

Indeed, in *United States v. Savian*, 528 F.3d 957, 965 (D.C. Cir. 2008), the United States Court of Appeals for the D.C. Circuit reversed a defendant's convictions for violating 18 U.S.C. § 1001(a)(1) under similar circumstances. The defendant in that case—the General Services Administration Chief of Staff—went on an overseas golf trip with a high-profile lobbyist. Before doing so, he asked the GSA's General Counsel whether the lobbyist could pay his airfare for the trip. In his inquiry, however, the defendant failed to disclose that he had been providing information to the lobbyist regarding two GSA-controlled properties in which the lobbyist was interested. Based on the information that the defendant provided, the General Counsel advised him that he could accept the airfare. During a later ethics inquiry, the defendant again failed to mention the lobbyist's interest in the two GSA properties. He later wrote a letter to the same effect to a Senate Committee.

A federal grand jury charged the defendant with, among other things, "falsify[ing], conceal[ing] and cover[ing] up by a trick, scheme, and device material facts" in violation of 18 U.S.C. § 1001(a)(1). *Id.* at 963. On Count 2 of the indictment, which dealt with the defendant's request for a GSA ethics opinion, the jury found that he had violated section 1001(a)(1) when he had "concealed his assistance to [the lobbyist] in official GSA-related activities." *Id.* On Count 3 of the indictment, which dealt with the later ethics investigation, the jury similarly found that the defendant had violated section 1001(a)(1) when he had "concealed his assistance to [the lobbyist] in official GSA-related activities." *Id.*

On appeal, the United States Court of Appeals for the D.C. Circuit reversed those convictions. *Id.* at 964–65. The court observed that that "there must be a legal duty to disclose in order for there to be a concealment offense in violation of § 1001(a)(1), yet the government failed to identify a legal disclosure duty except by reference to vague standards of conduct for government employees." *Id.* at 964 (footnote omitted). Some of those "vague standards" are the same standards on which the government relied in this case, including that "[e]mployees shall put forth honest effort in the performance of their duties," 5 C.F.R. § 2635.101(b)(5), and "[e]mployees shall not use public office for private gain,'" 5 C.F.R. § 2635.101(b)(7). *See id.* at 964–65. The court ruled that the relationship of these ethics regulations to the defendant's "duty" under section 1001(a)(1) not to conceal material facts in any matter within the executive branch of the government was "tenuous at best." *Id.* at 964. The court said: "If an employee violates a standard of conduct, he may be subject to disciplinary action. [5 C.F.R.] § 2635.106(a). We cannot see how this translates into criminal liability under 18 U.S.C. § 1001(a)(1) whenever someone seeking ethical advice or being interviewed by a GSA investigator omits 'relevant information.'" *Id.* at 964.

The court explained further that "[c]oncealment cases in this circuit and others have found a duty to disclose material facts on the basis of specific requirements for disclosure of specific information." *Id.* (citing cases). That's because, "to comply with Fifth Amendment due process, the defendant must have fair notice of what conduct is forbidden. This 'fair warning' requirement prohibits application of a criminal statute to a defendant unless it was reasonably clear at the time of the alleged action that defendant's actions were criminal." *Id.* at 964–65 (cleaned up). And "[t]he ethical principles give no indication of the particular facts or information an executive employee must disclose. Nor do they suggest that they

10

have any bearing on conduct during a GSA investigation or a request for an ethics opinion." *Id.* at 965. For this reason and others, the court concluded "that [the defendant] had no legal duty to disclose and that his concealment convictions cannot stand." *Id.* at 965.

Under section 201(b)(2)(C), the requirement that the government prove that the defendant violated a particular "official duty" is explicit in the statute itself. And, as *Savian* establishes, that duty cannot be based on vague ethics regulations that do not give government employees fair warning of conduct that may result in criminal liability. Section 2635.101(b)(5), which directs government employees not to use government property for "other than an authorized purpose," is such a regulation, especially considering that 28 C.F.R. § 45.4 expressly authorizes government employees to use "Government office and library equipment and facilities" for "[p]ersonal use that involve[s] only negligible expense (such as electricity, ink, small amounts of paper, and ordinary wear and tear)."

Aside from the testimony regarding the vague ethics regulations, the only evidence that touched on Mr. Paitsel's "official duties" came from Mr. Paitsel's FBI supervisor, Temitayo Aderoba, who testified:

> He was a special agent assigned to my unit. His core responsibility was to liaison with the workforce, to include professional staff and special agents, to help us gather what we call the business requirements to, one, either enhance current capabilities of systems that we currently have or, two, to build -- help us build capabilities that is required, that is current a gap within the workforce to enhance the job.

Doc. 250 at 96. And no evidence showed that Mr. Paitsel had violated those duties in any fashion, much less that he corruptly accepted something of value from Mr. Bailey as an incentive to do any act relating to those duties.

To make matters worse, over Mr. Paitsel's objection, *see* Doc. 119, this Court admitted into evidence all of the regulations setting forth the "Standards of Ethical Conduct

11

for Employees of the Executive Branch," *see* Doc. 250 at 87; Gov't Ex. 7A, including those that the *Savian* court ruled were entirely too vague to place government employees on notice that a violation could result in criminal liability. Armed with the entire set of those regulations, the jury may have found Mr. Paitsel guilty of bribery and of conspiracy based only on a determination that he had violated his ethical duty to, for example, "put forth honest effort in the performance of [his] duties." See 5 C.F.R. § 2635.101(b)(5) (Gov't Ex. 7A at 1). Because Mr. Paitsel did not have fair warning that he could be convicted of conspiracy and bribery if he breached that and other similarly vague ethical obligations, there is a substantial likelihood that Mr. Paitsel will succeed on the merits of his challenge to his convictions on this basis also. *Cf. United States v. Morlang*, 531 F.2d 183, 192 (4th Cir. 1975) (reversing convictions where court instructed jury on ethics regulations that "invoke[d] standards too indefinite and vague to be a part of our criminal law in this context when there was no charge or evidence that the bribes alleged may have been for such purpose").

    c. **By instructing the jury that Mr. Paitsel had an "official duty not to use government resources for nonofficial business," this Court inadvertently permitted the jury to convict Mr. Paitsel for conduct that does not constitute a federal crime.**

As discussed above, this Court instructed the jury that the third element the government was required to prove on the bribery count was that Mr. Paitsel corruptly accepted something of value "in return for being induced to violate his official duty not to use government resources for nonofficial business." *See* Doc. 309 at 69. Because, as also discussed above, the government failed to prove that he had any such "official duty," it is likely, perhaps certain, that the jury convicted Mr. Paitsel under both sections 201(b)(2)(C) and 371 based on conduct that does not constitute a federal criminal offense. "By anyone's

lights, that is prejudicial" and requires reversal of Mr. Paitsel's convictions. *See United States v. Lawson*, 995 F.2d 290, 294 (D.C. Cir. 1993) (reversing embezzlement convictions because of "the distinct possibility" that the jury convicted the defendant for conduct that 18 U.S.C. § 501(c) does not make a federal crime). Therefore, Mr. Paitsel has a substantial likelihood of success on the merits of his challenge to his convictions on this basis too.

### d. The evidence failed to show that Mr. Paitsel agreed to accept a bribe, rather than a gratuity.

A defendant cannot be convicted under section 201(b)(2)(C) unless the evidence shows that he acted "corruptly." In this context, "corruptly" means to act with a particular kind of "unlawful purpose" —a defendant must intend to accept a benefit as part of a "quid pro quo" in exchange for the violation of an official duty. *See United States v. Fischer*, 64 F.4th 329, 354 (D.C. Cir. 2023); *Valdez v. United States*, 475 F.3d 1319, 1330 (D.C. Cir. 2007) ("a covered public official who in violation of official duty corruptly provides information in return for something of value commits a federal crime: bribery") (Kavanaugh, J., concurring).

As discussed above, the "official duty" that the government contended Mr. Paitsel agreed to violate was his supposed duty not to use government resources for non-official business. Yet the government produced no evidence showing that Mr. Paitsel accepted a benefit in exchange for any agreement to violate any such official duty. Viewing the evidence in the light most favorable to the government as we must, the evidence showed only that Bailey asked Mr. Paitsel to find him contact information for tenants who likely had TOPA rights and then rewarded him with a payment afterward if information he procured helped Bailey turn a profit. When a gift is "intended as a 'reward' for a specific past or future official act, a defendant has paid an illegal gratuity," not a bribe. *See United*

13

*States v. Ring*, 706 F.3d 460, 464 (D.C. Cir. 2013); *accord Valdes*, 475 F.3d at 1335. Likewise, when a defendant agrees to accept a reward for an official act, he conspires to accept a gratuity, but he does not conspire to accept a bribe. *Cf. United States v. Moore*, 525 F.3d 1033, 1038-39 (11th Cir. 2008) (conspiracy to accept illegal gratuity is a lesser included offense of conspiracy to commit bribery).

Yet the jury in this case was not instructed on any lesser-included offense. And, if a defendant is convicted of a greater offense but the evidence supports only a conviction on a lesser-included offense on which the jury was not instructed, that defendant is entitled to vacation of his conviction. *See United States v. Dhinsa*, 243 F.3d 635, 675 (2d Cir. 2001); *accord United States v. Vasquez-Chan*, 978 F.2d 546, 554 (9th Cir. 1992) (court of appeals can enter judgment on lesser included offense only if, among other conditions, the jury was "explicitly instructed that it could find the defendant guilty of the lesser-included offense and [was] properly instructed on the elements of that offense"), *overruled on other grounds, United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010); *cf. United States v. Melton*, 491 F.2d 45, 49 (D.C. Cir. 1973) (refusing to order entry of judgment on a lesser included offense where the defendant specifically rejected a lesser-included-offense instruction and the government chose to seek conviction on only the greater offense).

Because that's the case here, even assuming no structural or other reversible error, there is a substantial likelihood that Mr. Paitsel will succeed on his challenge to both his bribery conviction and his conspiracy conviction.

## Conclusion

For all of these reasons, David Paitsel requests this Court to permit him to remain released pending the resolution of his appeal.

Respectfully submitted,

/s/_____
DAVID BENOWITZ
D.C. BAR NO. 451557
PRICE BENOWITZ LLP
409 SEVENTH STREET, NW
SUITE 200
WASHINGTON, DC 20004
david@pricebenowitz.com
COUNSEL FOR DAVID PAITSEL

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December 2023, a true copy of the foregoing David Paitsel's Notice of Filing was served via the CM/ECF system upon Assistant United States Attorney Elizabeth Aloi, United States Attorney's Office, 555 Fourth Street, Washington, DC 20530.

/s/_____
DAVID BENOWITZ

15